UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| CAROLINA MIGRANT NETWORK, AMICA CENTER FOR IMMIGRANT RIGHTS, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, <br><br> Defendant. | **CASE NO. 3:26-CV-28** |

**PLAINTIFFS' OPPOSITION TO MOTION TO STAY PROCEEDINGS**

Plaintiffs respectfully oppose Defendant's motion to stay or continue proceedings and its alternative motion for a continuance of 30 days. Despite Defendant's claims that ICE's FOIA office is currently furloughed and therefore "not authorized to perform work on FOIA matters," ECF No. 9, ¶ 4, there is ample evidence that (1) ICE's FOIA office is actually not completely furloughed and (2) ICE has ample funding available to continue funding its statutorily required functions – which included FOIA matters – but has unlawfully and inexplicably chosen to "close" its FOIA office to avoid disclosing information about its activities to the public. Accordingly, this Court should deny Defendant's motion to stay and its alternative motion for a 30-day continuance.

  I.  **Developments Before the Partial Shutdown**

1

1. On January 14, 2026, Plaintiffs filed the instant litigation seeking records related to ICE's June 9th, 2025, Alternatives to Detention (ATD) memorandum, the subject of Plaintiffs' expedited FOIA request.

2. ICE's memorandum impacts hundreds of thousands of individual noncitizens, and based on reporting from *The Washington Post*, advises ICE offices to institute a policy of maximum ankle monitoring of noncitizens as a form of ATD.[1]

3. As pleaded in Plaintiffs' Complaint, Plaintiffs submitted a FOIA request seeking this memorandum under FOIA's expedited processing provision as well as the agency's violation of FOIA by failing to publish the memorandum under FOIA's affirmative disclosure provisions. *See* ECF Nos. 1 ¶¶ 22-26, 34-35 (Complaint); 1-2 (FOIA Request); *see also* 5 U.S.C. 552(a)(1)-(a)(2). Despite the scope and impact of the memorandum on noncitizens, including Plaintiffs' past, present, and future clients, ICE denied Plaintiffs' expedited processing request, which the agency's appellate body affirmed. *See* ECF Nos. 1-3, 1-4. Thereafter, Plaintiffs filed the instant litigation.

4. On February 5th, 2026, prior Counsel for the Defendant, Caroline McClean, contacted the undersigned, stating, "I have been able to touch base with the agency, which is hoping to make a production by the end of the month but is still assessing

---

[1] *See* Marianne LeVine, et al., *ICE moves to shackle some 180,000 immigrants with GPS ankle monitors*, WaPo (July 24, 2025), https://www.washingtonpost.com/immigration/2025/07/24/ice-check-in-ankle-monitor-immigrants/ ) ("If the [noncitizen] is not being arrested at the time of reporting, escalate their supervision level of GPS ankle monitors whenever possible and increase reporting requirements.")

2

the request and would appreciate a bit more time." On Friday, February 6th, the undersigned responded, advising that he would provide a firm answer on the following Monday and asked if Defendant would be posting the June 9th memorandum to its FOIA Reading Room, as Plaintiffs maintain it is required to do under FOIA. *See* Ex. A, Email Correspondence Between Counsel at 4-5.

5. On Monday, February 9th, the undersigned emailed opposing counsel and advised that while Plaintiffs were not opposed to a continuance, if ICE did intend to publish the June 9th memo, Plaintiff would file a motion for a preliminary injunction by the end of the week. The motion would seek an order from the Court requiring ICE to upload the June 9th memorandum to its reading room. *See id.* at 4.

6. On February 11, 2026, contrary to Defendant's claim in the instant motion (¶ 2), opposing counsel stated, "the agency plans to process the 6/9/25 memo to produce it. It will be posted in the ICE FOIA Library on ICE's public facing website. The agency does need to review redactions which they hope to do by the end of the week." *Id.* at 3-4.

7. Plaintiffs agreed to hold off on filing a motion for preliminary injunction and agreed to a brief continuance to allow the agency time to perform these tasks and either resolve the need for further litigation or narrow the issues before the Court. *See id.*

## II. Developments Following the Partial DHS Shutdown

8. At midnight, on Saturday, February 14, 2026, DHS entered a partial shutdown after Congress failed to pass necessary funding legislation for the

agency.[2] Subsequently, on March 12, 2026, Defendant's counsel advised Plaintiffs that the ICE FOIA office was furloughed and that it could not provide Plaintiffs with the June 9th memo nor post the same to ICE's FOIA Reading room. *See id.* at 1. Defendant's motion to stay or to continue followed. ECF No. 9.

### III. Argument

9. There are several factual and legal issues that undermine Defendant's purported need for a stay in the instant litigation. First, in the instant motion, Defendant provides no evidence to the Court beyond the bare assertion of counsel that it is unable to comply with FOIA's requirements. Despite Defendant's claim regarding its inability to perform its statutory duties under FOIA, from February 12, 2026, to present, the ICE FOIA Reading Room has been updated <u>no less than *seven* times with document publications</u>—the last being March 13, 2026. *See* ICE, FOIA ICE Library (Last updated March 13, 2026).[3]

10. As detailed in ICE's FOIA Processing Manual, this discrete task to meet the agency's FOIA affirmative disclosure obligations requires FOIA staff's involvement—

> The FOIA processing staff will provide the designated FOIA employee responsible for posting documents to the FOIA Library with the request number and a copy . . . The designated FOIA employee will hold on to this notification for 30 business days before performing any further action. After the 30 day period the designated FOIA employee will check the FOIAXpress system to determine if the request was a high-profile/media request that went through the required internal and external clearance

---

[2] Ximena Bustillo, "5 things to know about the shutdown at the Department of Homeland Security," *NPR.org* (Feb. 14, 2026), https://www.npr.org/2026/02/14/nx-s1-5713914/department-of-homeland-security-shutdown
[3] https://www.ice.gov/foia/library.

> process. If the request *has* gone through the required internal and external clearance process, the designated FOIA employee will review the records for proper redaction. Once complete the designated FOIA employee will convert the file to PDF format when possible . . . then send to the Deputy FOIA Officer for review and clearance. . . Upon concurrence/clearance that the documents are ready for posting the designated FOIA employee will send an e-mail containing the document(s) as attachment(s) . . . From there ICE Web Management Services will post the document to the website . . . .

*See* ICE, Freedom of Information Act (FOIA) Standard Operating Procedure (SOP) 2014, 2017, at internal pg. nos. 51-52 (last accessed March 13, 2026).[4]

11. This is precisely the relief that Plaintiffs and Defendant agreed to in early conferrals and that Plaintiffs relied on in deferring their motion for a preliminary injunction—that the agency would post the memo to its FOIA Library as promptly as possible, as it has apparently been doing for other records over the last several weeks. *See* ¶¶ 6-7, *supra*. Defendant has not explained how far along it was in processing the responsive documents related to this matter, the June 9th memorandum in particular, before the purported shutdown of its FOIA office occurred.

12. Defendant has also not meaningfully addressed the issue of ICE's continued posting to the reading room, which at least seriously undermines the agency's claim that it cannot post the June 9th memo and, at worst, gives the impression that the agency is speaking out of both sides of its mouth. Either the agency has the capacity and resources to upload the June 9th memo to its FOIA Library, as it has done with many other documents, or it has been serially violating

---

[4] https://www.governmentattic.org/58docs/ICEfoiaSOP2014_2017.pdf.

the Antideficiency Act. Defendant's unsupported claims lack the necessary credibility as a basis for a stay or further continuance in the instant matter.

13. Second, FOIA prohibits "secret law" where the agency attempts to implement policies like a contingency plan and/or procedures for lapses in appropriations, without having made those plans and procedures available or published them, or that the party has actual and timely notice of the terms thereof. *See* 5 U.S.C. § 552(a)(2)(E), ("A final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public may be relied on, used, or cited as precedent by an agency against a party other than an agency **only if**—**(i)** it has been indexed and either made available or published as provided by this paragraph; or **(ii)** the party has actual and timely notice of the terms thereof." (emphasis added)).

14. Defendant has failed to meet any requirement of this section of the statute, as it does not elucidate the actual terms of the contingency and lapse of appropriations plans. DHS has apparently implemented some sort of contingency plan for the lapse in appropriations with respect to certain components of its sub-agencies, but unlike the agency-wide shutdown in 2025,[5] neither DHS nor ICE has publicized that guidance. This violates FOIA. DHS's secret contingency plan cannot be used against Plaintiffs in this matter. Even assuming DHS or ICE had published guidance, Plaintiffs were not given actual and timely notice of the terms, and

---

[5] *See* U.S. Department of Homeland Security, Procedures Relating to a Lapse in Appropriations (September 2025), (Sept. 29, 2025), https://www.dhs.gov/publication/lapse-funding-dhs/.

6

therefore, ICE cannot implement secret law that it then hides behind to the Plaintiffs', their clients, and the public's detriment regarding these critical records.

15. Defendant's decision to shutter its FOIA office is quite gob-smacking given that it was recently the beneficiary of $85 *billion* dollars under the "One Big Beautiful Bill Act," making it the best-funded law enforcement agency in the country (and, presumably, in history).[6] Over the next <u>four years</u>, "[i]f the agency spends that money at a steady pace and current funding levels continue, it would have nearly $29 billion on hand each year. That essentially triples ICE's budget from recent years." *Id*. There is thus no credible reason that ICE's FOIA office should be furloughed right now, from a financial perspective.

16. Further, Plaintiff is aware of no authority (and Defendant cites none) that an agency can decide to refuse to fund statutorily required functions when funding is readily available, and its motion does nothing to elucidate this point.

17. However, there is authority for the notion that an agency's purported lack of additional funding to meet its obligations under FOIA does not excuse it from its statutory mandate. *See Fiduccia v. U.S. Dept. of Justice*, 185 F.3d 1035, 1041 (9th Cir. 1999) ("So long as the Freedom of Information Act is the law, we cannot repeal it by a construction that vitiates any practical utility it may have. . . It may be that agency heads, such as the Attorney General in this case, can be forced by the Freedom of Information Act to divert staff from programs they think more valuable to Freedom of Information Act compliance. . . But these policy

---

[6] *See* NPR, *How ICE grew to be the highest-funded U.S. law enforcement agency* (Jan. 21, 2026), https://www.npr.org/2026/01/21/nx-s1-5674887/ice-budget-funding-congress-trump

7

concerns are legislative, not judicial, and we intimate no views on them. Congress wrote a tough statute on agency delay in FOIA compliance, and recently made it tougher."). DHS's broader lapse in funding, at face value, does not impact ICE's functions, including its FOIA obligations, and Defendant lacks a credible showing otherwise. This Court should not accept ICE's voluntary, unjustified, and unlawful decision to "furlough" its FOIA office, as doing so would reward the agency for its bad-faith actions and allow it to continue avoiding public transparency and accountability.

18.  The agency wholly fails to establish that it merits any further delay in producing what it has already promised and is statutorily required to produce. Its motion does not establish otherwise. For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion for a stay in proceedings or any further continuances. ICE cannot hide behind secret policies or continue to choose at will which functions it will fund or what work it will continue to do in the face of clear statutory obligations duly enacted by Congress.

Dated: March 16, 2026.                                         Respectfully submitted,

By: /s/ Daniel Melo
Daniel Melo
NC Bar No. 48654
The Melo Law Firm
2920 Forestville Road, Ste 100
PMB 1192
Raleigh, NC 27616
Tel: (919) 348-9213
dan@themelolawfirm.com
*Pro Bono Counsel For Plaintiffs*

/s/ F. Evan Benz

                                              F. Evan Benz, Esq.
                                              NC Bar No. 49077
                                              AMICA CENTER FOR IMMIGRANT RIGHTS
                                              1025 Connecticut Ave NW Ste. 701
                                              Washington, DC 20036
                                              Phone: (202) 869-3984
                                              [evan@amicacenter.org](mailto:evan@amicacenter.org)
                                              *Pro Bono Counsel for Plaintiffs*

# **CERTIFICATION**

Pursuant to this Court's Standing Order, dated June 18, 2024, undersigned counsel hereby certifies the following:

No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: March 16, 2026

/s/     Daniel Melo

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he has served the foregoing filing with the Clerk of Court using the CM/ECF system, which will deliver a copy to all Parties.

    Dated: March 16, 2026

                                          /s/    Daniel Melo