IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:26-CV-28-MOC-MTO

| | |
|---|---|
| CAROLINA MIGRANT NETWORK, AMICA CENTER FOR IMMIGRANT RIGHTS,<br><br>     Plaintiffs,<br><br>     v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>     Defendant. | |

## UNITED STATES' MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The United States has moved this Court for summary judgment under

Federal Rule of Civil Procedure 56 because there exists no genuine issue of material

fact and the United States is entitled to judgment as a matter of law. For the

reasons described below, this Court should grant the United States' motion for

summary judgment and enter judgment in favor of the United States and against

Plaintiffs.

## BACKGROUND

### A.    ICE's FOIA operating procedures.

Each year, United States Immigration Customs Enforcement (ICE) processes

tens of thousands of requests for records under the Freedom of Information Act

(FOIA), 5 U.S.C. § 552. In Fiscal Year 2025, for example, ICE received 62,238 FOIA

1

requests.  Department of Homeland Security, *Fiscal Year 2025 Freedom of Information Act Report* (*2025 Report*) at 13.[1]  That same year, ICE processed 79,310 FOIA requests.  *Id.*  ICE also received more than 478 administrative appeals in Fiscal Year 2025 and processed more than 489 administrative appeals during that same year.  *Id.* at 15.  ICE did not collect any fees for processing more than 79,000 FOIA requests.  *Id.*

Because of the overwhelming number of FOIA requests ICE receives and the need to process those requests as fairly and expeditiously as possible, the Department of Homeland Security, ICE's parent agency, has adopted two policies: First, DHS has adopted a "multi-track" system of processing; second, DHS has adopted a policy of processing such requests "on a first-in/first-out basis" within each of those tracks.  *2025 Report* at 7–8.  ICE designates FOIA requests as "simple," "complex," or "expedited."  *See 2025 Report* at 8.

When ICE's FOIA office receives a FOIA request and its intake staff determines that it is a proper FOIA request, the agency assigns it a case tracking number.  08/05/26 Declaration of Kenneth N. Clark attached as Exhibit 1 ¶¶ 7–8. Based on ICE FOIA's deep knowledge of the missions of ICE's different component offices, ICE FOIA identifies the program office(s) likely to possess responsive records and directs those offices to conduct a search for responsive records.  Ex. 1 ¶ 8.  Each of ICE's leadership offices or directorates is staffed with a designated

---

[1] Available at https://www.dhs.gov/sites/default/files/2026-07/FOIA%20Annual%20Report%202025%20%28PDF%29.pdf.

FOIA point of contact who is a person "with detailed knowledge about the operations of his/her respective program office." Ex. 1 ¶ 9.

When a point of contact receives a FOIA request through ICE FOIA, the point of contact will forward the request and instructions to the employees within the unit or directorate that are likely to have responsive records, if any. Ex. 1 ¶ 10. The point of contact directs the recipients to search their file systems, "including both paper files and electronic files, which in their judgment would be most likely to contain responsive documents." Ex. 1 ¶ 10. One of the file systems ICE employees maintain and search is an email system through Microsoft Outlook. Ex. 1 ¶ 12. Once the searches of all file systems are completed, the point of contact forwards any responsive records to ICE's FOIA office. Ex. 1 ¶ 10.

Upon receipt of potentially responsive records from ICE FOIA's point of contact, an ICE FOIA processor reviews the records to determine (1) whether they are responsive to the FOIA request at issue and (2) whether any FOIA exemption applies to counsel or direct against disclosure. Ex. 1 ¶ 10. If ICE FOIA determines that some or all of the records are responsive to the FOIA request, the ICE FOIA processor redacts any information that should be redacted under FOIA or the Privacy Act, 5 U.S.C. § 552a. Ex. 1 ¶ 13. The ICE FOIA processor also ensures that "all reasonably segregated non-exempt information is released." Ex. 1 ¶ 13.

### B. Plaintiffs submit a FOIA request.

On October 28, 2025, Plaintiffs submitted to ICE a FOIA request for records. Ex. 1 ¶ 15; FOIA Request attached as Ex. B to Ex. 1. Plaintiffs asked for "[t]he

memorandum or guidance issued on or about June 9, 2025, authored or signed by Dawnisha M. Helland, Acting Assistant Director" of ICE's Enforcement and Removal Operations, related to "Alternatives to Detention (ATD), check-ins, and the directive to use GPS ankle or wrist monitors for non-detained individuals."  Ex. 1 ¶ 16; Ex. B at 1.  Plaintiffs also requested "[a]ny accompanying implementing instructions, appendices, standard operating procedures, or field guidance transmitted with the memorandum, as well as any later memoranda, directives, or emails that modify, supersede, or rescind it."  Ex. B at 1.  Plaintiffs also asked ICE to grant them a public-interest fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) and to expedite the processing of their FOIA request under 6 C.F.R. § 5.5(e).  Ex. B at 2–3.

Three weeks later, on November 21, ICE acknowledged receipt of Plaintiffs' FOIA request three days later.  Ex. 1 ¶ 18; FOIA Receipt attached as Ex. C to Ex. 1.  ICE also denied Plaintiffs' expedited-processing request.  Ex. 1 ¶ 18; Ex. B at 1.  Plaintiffs appealed the denial of their expedited-processing request that same day.  Ex. 1 ¶ 19; Appeal Receipt attached as Ex. D to Ex. 1.

Also on November 21, ICE asked its Enforcement and Removal Operation office to conduct a search to locate any records responsive to Plaintiffs' FOIA request.  Ex. 1 ¶ 18.  The Enforcement and Removal Operation office oversees programs and conducts operations to "identify and apprehend removal aliens, to detain these individuals when necessary, and to remove illegal aliens from the United States."  Ex. 1 ¶ 17.  The office manages "all logistical aspects of the removal

4

process," including "domestic transportation, detention, alternatives to detention programs, bond management, and supervised release." Ex. 1 ¶ 17.

In December of 2025, ICE's Government Information Law Division affirmed the denial of Plaintiffs' request for expedited processing. Ex. 1 ¶ 21; 12/19/25 Letter to Pl. attached as Ex. E to Ex. l. ICE also notified Plaintiffs that their FOIA request would be processed in the order in which it was received, consistently with ICE's first in/first out policy. Ex. 1 ¶ 22; 12/28/25 Email to Pl. attached as Ex. F to Ex. 1. And ICE explained that it was "not currently assessing fees," obviating any need to decide Plaintiffs' fee-waiver application because "the issue [was] not yet ripe for review." Ex. E at 3.

After reviewing Plaintiffs' FOIA request, ICE's Enforcement and Removal Operation office determined that any responsive records would be maintained within that office's Field Operations Division. Ex. 1 ¶ 25. That office initially found four pages of responsive records and sent those pages to ICE's FOIA office for review and processing on January 12, 2025. Ex. 1 ¶¶ 23, 28.

### C.    Plaintiffs file this action against ICE.

Two days later, on January 14, Plaintiffs filed this action against ICE. ECF No. 1. In their complaint, Plaintiffs allege that in the June 9, 2025, memorandum they sought, ICE ordered staff to place ankle monitors on all individuals enrolled in its Alternatives to Detention program — an expansion of ankle monitoring to "potentially over 180,000 noncitizens." WDNC Case No. 3:28CV26, ECF No. 1 ¶¶ 8, 10. Plaintiffs allege that ICE's "true purpose" in expanding its ankle-monitoring

5

program was the "coercion" of noncitizens "into accepting 'voluntary' deportation." ECF No. 1 ¶ 11.  Plaintiffs also allege that ICE "has yet to make this memo publicly available."  ECF No. 1 ¶ 5.

Plaintiffs allege in their complaint that as of the date of its filing, ICE had "not conducted a search for records responsive to" their FOIA request, had "improperly withheld records from Plaintiffs responsive to" their FOIA request, and had "failed to comply" with FOIA's timeliness provisions.  ECF No. 1 ¶¶ 27–28, 32.

Plaintiffs assert six causes of action in their complaint.  ECF No. 1 ¶¶ 36–60. Plaintiffs claim (1) ICE constructively denied their FOIA request by omitting to respond to their request within the statutory timeliness deadline described in 5 U.S.C. § 552(a)(6); (2) ICE failed to conduct an adequate search in violation of 5 U.S.C. § 552(a)(3)(C); (3) ICE "is improperly withholding non-exempt agency records" by "failing to produce the non-exempt records responsive to the Plaintiffs' requests"; (4) ICE has failed to publish its current guidance related to the Alternatives to Detention program, including the June 9, 2025, memorandum, in violation of 5 U.S.C. § 552(a)(1)–(a)(2); (5) ICE arbitrarily or capriciously denied Plaintiffs' "proper and justified request for expedited processing," in violation of FOIA; and (6) ICE "actually or constructively" denied Plaintiffs' fee-waiver request in violation of FOIA.  ECF No. 1 ¶¶ 36–60.

In their prayer for relief, Plaintiffs ask this Court to declare ICE in violation of FOIA, to order ICE "to begin searching" for records responsive to Plaintiffs' FOIA request; to order "expeditious proceedings" under FOIA; to order ICE to waive all

6

fees related to Plaintiffs' FOIA request; and to order ICE to prepare an index describing withheld records and applied FOIA exemptions in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). ECF No. 1 at 15–16. Plaintiffs also ask this Court to enjoin ICE from continuing to withhold all non-exempt records and from "its ongoing violations of FOIA by failing to publish its current" guidance related to its Alternatives to Detention program; and to award attorneys' fees and costs. ECF No. 1 at 16.

> **D. ICE produces all records responsive to Plaintiffs' FOIA request, with limited redactions required by FOIA exemptions.**

After receiving the four potentially responsive pages of records from ICE's Enforcement and Removal Operation office, ICE's FOIA office reviewed those records and determined that all four pages were responsive to Plaintiffs' FOIA request. Ex. 1 ¶ 28. ICE's FOIA office also conducted a further review and determined that there remained other locations to search for responsive records. Ex. 1 ¶ 29. On February 9, 2026, therefore, ICE directed the Non-Detained Management Division of ICE's Enforcement and Removal Operation office to conduct a search for responsive records. *Id.* That division provides "guidance coordination, and operational directions" to all of the Enforcement and Removal Operation field offices about managing ICE's non-detained docket, including the Alternatives to Detention program. Ex. 1 ¶ 30.

The Non-Detained Management Division conducted a search of its records and found one page of potentially responsive documents. Ex. 1 ¶ 31. On April 16, that office sent the page to ICE's FOIA office to review, and ICE FOIA found the

7

record to be responsive.  *Id.*  The United States filed its Answer to Plaintiffs'

complaint six days later, on April 22.

1.    *June 9, 2025, email*

A week after the United States filed its Answer, on April 29, ICE published

the June 9, 2025, email in the ICE FOIA Library, as Plaintiffs had requested.  This

email was addressed to all Enforcement and Removal Operation personnel from

that office's "Assistant Directors."  Ex. 1 ¶ 32; ICE FOIA Production attached as Ex.

2 at 5.  This email has the subject line, "Increase of In-Person Check-Ins at

Contractor Offices for [Alternatives to Detention] Participants."  ICE FOIA

Production attached as Ex. 2 at 5.  As posted, ICE redacted under FOIA Exemption

7(E), 5 U.S.C. § 552(b)(7)(E), the "details" of the email related to the "changes to

reporting requirements for aliens assigned to the [Alternatives to Detention]

program."  *Id.*  That exemption applies to "records or information compiled for law

enforcement purposes," to the extent that the production of the records or

information "would disclose techniques and procedures for law enforcement

investigations or prosecutions, or would disclose guidelines for law enforcement

investigations or prosecutions if such disclosure could reasonably be expected to risk

circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

ICE explains in its *Vaughn* index that "disclosure of changes made to

internal procedures" related to reporting requirements for aliens assigned to the

Alternatives to Detention program "could reasonably be expected to risk

circumvention of the law by revealing critical security measures and protocols for

the frequency of check-ins; scrutiny given during check-ins; and questions, affect, and observations conducted during check[-]ins." *Vaughn* Index attached as Ex. A to Ex. 1 at 7. ICE also explains that knowledge of the program's reporting requirements could also allow aliens "to modify their behaviors" based on the required frequency of "random, non-scheduled in-person check-ins" and allow the aliens to learn "how to contact proxies to vouch for their employment or good conduct" and "how to modify their social behaviors to minimize the appearance of high-risk conduct that would lead to a return to detention or removal." Ex. A at 7. These tactics could enable aliens "to evade detection, and therefore, circumvent the enforcement" of immigration laws. Ex. A at 7; Ex. 1 ¶ 51. "To allow this information to be disseminated to the public would irreparably harm ICE's ability to enforce its immigration policies and to keep the nation safe." Ex. 1 ¶ 52.

Also redacted from the email were the email address of the "unit chief" and the name of the "Acting Assistant Director" of the Non-Detained Management division of the Enforcement and Removal Operations office. Ex. 2. at 5. ICE redacted this information under FOIA Exemptions 6, 7(C), and 7(F). FOIA Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) applies to "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). And Exemption 7(F) applies to "records or information compiled for law enforcement purposes" that

9

"could reasonably be expected to endanger the life or physical safety of any individual." *Id.* § 552(b)(7)(F).

ICE explains in its *Vaughn* index that Exemption 7(F) requires the redaction of its employees' personal information in the June 7 email because aliens enrolled in the Alternatives to Detention program who are subject to an executable final order of removal or otherwise have violated the terms of their release "would certainly have a motive" to threaten or target ICE employees "who have designed the . . . program" or who have "been involved in the changes made to the reporting requirements for aliens assigned" to the program. Ex. A at 7. ICE explains that since February of 2025, ICE personnel have experienced a 400% increase in threats to their safety, with employees of the Enforcement and Removal Operations office particularly targeted for harassment and threats to their safety and life. Ex. A at 7; Ex. 1 ¶ 59. Because release of the names in the email would "reasonably endanger" the life or safety of those employees, Exemption 7(F) "is an absolute ban to release." Ex. A at 7.

Finally, ICE explains in its *Vaughn* index that Exemptions 6 and 7(C) apply to authorize the redaction of its employees' personal information because disclosure of its law-enforcement employees' names and email addresses "would reasonably be expected to constitute an unwarranted invasion of personal privacy." Ex. A at 6. ICE explains that targets of law-enforcement investigations may "begrudge personnel for an indefinite time period and seek revenge," harming "ICE's ability to effectively conduct future investigations." Ex. A at 6. The agency notes in its

*Vaughn* index that ICE has been designated by the United States Office of Personnel Management as a "Security/Sensitive Agency," a designation reserved for agencies whose employees are "subject to heightened risk of harassment or attack." Ex. A at 6; *see also* Ex. 1 ¶ 46.  Disclosure of personally identifiable information could also "expose employees to an increase" in "cyber threats."  Ex. 1 ¶ 46.  The agency asserts that disclosure of this personally identifiable information would serve "no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities."  *Id.*  And its employees' privacy interests "outweigh[] any minimal public interest that could possibly exist in the disclosure of this information."  Ex. A at 6.

### 2.  *March 7, 2025, email*

On July 9, 2026, ICE FOIA released all of its records responsive to Plaintiffs' FOIA request, including the redacted June 9, 2025, email that it had previously published in its online library.  Ex. 1 ¶¶ 33, 37; 07/09/26 Letter to Pl. attached as Ex. 3.  This production also included a March 7, 2025, email titled, "Referral of Aliens to the Alternatives to Detention Intensive Supervision Appearance Program."  Ex. A at 4; Ex. 2 at 3.  The Assistant Directors in the Enforcement and Removal Operations office sent this email to all personnel, "explaining the latest procedures and policies on referring aliens" to that program.  Ex. A at 4.  Unredacted language in the email explains that this program is "a flight-mitigation tool that uses case management and technology to improve compliance with release conditions, court hearings, and final orders of removal."  Ex. 2 at 3.  The email also

11

explains that the "goal" of the Intensive Supervision Appearance Program "is to increase monitoring of aliens to ensure compliance with immigration law and compliance with departing the United States when ordered." Ex. 2 at 3.

ICE FOIA partially redacted the body of the March 7 email under Exemption 7(E). Ex. 2 at 3; Ex. A at 4. The *Vaughn* index explains that these 7(E) redactions were made to redact "internal procedures" related to Alternatives to Detention "A-Team Operations and responsibilities." Ex. A at 4. This information, the index explains, would disclose criteria for evaluation, eligibility, and enrollment in the Intensive Supervision Appearance Program, and this disclosure "could reasonably be expected to risk circumvention of the law by revealing critical security measures and protocols." Ex. A at 4; Ex. 1 ¶ 54. If enrollees were aware, for example, of the management tools and technologies the agency uses to monitor their release, "they could adjust their daily routines to proactively circumvent monitoring" or "use pretextual excuses to evade the application" of the "limited technological tools" used to monitor them. Ex. A at 4. Similarly, if enrollees were aware of enrollment criteria, "they could potentially manipulate the basis for their release and, as a result, be subject to less scrutiny upon release." Ex. A at 4.

As it did in the June 9 email ICE FOIA produced, ICE FOIA also redacted from the March 7 email identifiable information for unit chiefs and the Assistant Director of the Non-Detained Management division of ICE's Enforcement and Removal Operations office. Ex. 2 at 3. ICE FOIA redacted this information under FOIA Exemption 7(F) because aliens enrolled in the Alternatives to Detention

program who are subject to an executable final order of removal or who have violated the terms of their release would have a motive to threaten or target ICE employees who have designed the program and ICE personnel have faced a 400% increase in threats to their safety since February of 2025.  Ex. A at 5; Ex. 1 ¶ 59.  Because "life or physical safety is at risk," Exemption 7(F) "is an absolute ban to release."  Ex. A at 5.

ICE FOIA also redacted ICE employees' personal information under Exemptions 6 and 7(C).  Ex. A at 4.  The *Vaughn* index explains that disclosure of ICE employees' personally identifiable information and names would serve "no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities."  Ex. A at 4.  Even if there were "any minimal public interest that could possibly exist in the disclosure of this information," Ex. A at 4, ICE determined "that the disclosure of the information . . . would constitute a clearly unwarranted invasion of personal property," Ex. 1 ¶ 47.

### 3.  *October 10, 2025, email*

The final document ICE FOIA produced was an October 10, 2025, email from the "Office of the Executive Associate Director" of the Enforcement and Removal Operations office to all "Field Office Directors and Deputy Field Office Directors."  Ex. 2 at 1.  The subject of the email is, "Alternatives to Detention Enforcement Teams (A-Teams)."  Ex. 2 at 1.  The email states that the Alternatives to Detention Enforcement program is "re-establishing ATD Enforcement Teams (A-Teams) to align with Executive Order 14159, Protecting the American People Against

Invasion." Ex. 2 at 1. The A-Teams' "primary responsibility," the email describes, is "to initiate enforcement actions for aliens enrolled in" the Alternatives to Detention program who "are subject to an executable final order of removal and/or have otherwise violated the terms of release." Ex. 2 at 1. The email directs Field Office Directors to identify one Assistant Field Office Director point of contact who "will serve as the primary" point of contact "to facilitate the development of A-Teams." Ex. 2 at 1. ICE FOIA partially redacted under FOIA Exemption 7(E) two sections of the email under the subheadings, "A-Team primary responsibilities" and "Additional notes." Ex. 2 at 1. Also redacted under FOIA Exemptions 6, 7(C), and 7(F) are email addresses for two unit chiefs and the name of the "Acting Executive Associate Director" of the Enforcement and Removal Operations office. Ex. 2 at 1.

ICE describes in its *Vaughn* index that it redacted the language describing the "primary responsibilities" of the A-Teams and "additional notes" related to those A-Teams under Exemption 7(E) because the disclosure of internal procedures related to the Alternatives to Detention program could "reveal[] critical security measures and protocols used to identify" aliens in violation of the program, monitor the release of aliens" placed in the program, and "log information related to their check-ins." Ex. A at 3; Ex. 1 ¶ 50. ICE explains that these disclosures "could compromise the security and safety" of law-enforcement personnel" by enabling enrollees to "disrupt operations," "evade security measures," or "understand the metrics" that A-Teams use to identify program violators. Ex. A at 3. Disclosure would also allow program violators or those subject to a final order of removal to

Case 3:26-cv-00028-MOC-MTO    Document 20    Filed 08/13/26    Page 14 of 26

"modify their behavior, change their daily routines, and minimize or eliminate their social media presence, among other tactics, to evade detection, and therefore, circumvent the enforcement" of immigration laws.  Ex. A at 3; Ex. 1 ¶ 51.

In describing the redactions of ICE employees' personally identifiable information and email addresses under Exemptions 6, 7(C), and 7(F), the *Vaughn* index relies on the same reasons that information was redacted from both the March 7 and June 9 emails.  Ex. A at 2–7.  ICE explains the increasing threats against its employees, particularly personnel involved in Enforcement and Removal Operations; the threat disclosure would pose to those employees' lives and safety; and the lack of public interest in employees' personally identifiable information.  *Id.*

## ARGUMENT

**This Court should grant the United States' motion for summary judgment because there is genuine issue of material fact and the United States is entitled to judgment as a matter of law.**

### A.    Rule 56 standard

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### B.    Agency disclosure responsibilities under the Freedom of Information Act

The Freedom of Information Act "was passed 'to establish a general philosophy of full agency disclosure and assure the availability of Government information necessary to an informed electorate.'"  *Empower Oversight Whistleblowers & Res. v. Nat'l Inst. of Health*, 122 F.4th 92, 100 (4th Cir. 2024)

15

(quoting *Coleman v. DEA*, 714 F.3d 816, 818 (4th Cir. 2013)). Consistent with that purpose, FOIA requires agencies, upon any request for records which reasonably describes such records and otherwise complies with FOIA's request procedures, to make those records available. 5 U.S.C. § 552(a)(3)(A); *Zaid v. Dep't of Justice*, 96 F.4th 697, 703 (4th Cir. 2024).

At the same time, "because public disclosure is not always in the public interest, the statute contains nine exemptions that reflect a wide array of concerns and are designed to safeguard various public interests against the harms that would arise from overbroad disclosure." *Am. Mgmt. Serv., LLC v. Dep't of the Army*, 703 F.3d 724, 728–29 (4th Cir. 2013) (cleaned up). "FOIA exemptions are to be narrowly construed." *FBI v. Abramson*, 456 U.S. 615, 630 (1982). And the United States has "[t]he burden of demonstrating that a requested document falls under an exemption." *Hunton & Williams v. DOJ*, 590 F.3d 272, 277 (4th Cir. 2010).

"[T]he government's showing," however, "is to be measured by a standard of reasonableness, which takes into account the lack of certainty in attempting to predict harm while providing an objective test." *Zaid*, 96 F.4th at 704. The United States satisfies its burden when it describes "the withheld material with reasonable specificity" and explains "how it falls under one of the enumerated exemptions." *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 290 (4th Cir. 2004); *see also Driggs v. Central Intel. Agency*, No. 25-2177, — F.4th —, 2026 WL 2235297, at *3 (4th Cir. Aug. 4, 2026). The agency does not need to establish that an exemption applies "to each record withheld." *Zaid*, 96 F.4th at 704. "The Supreme Court has

16

held that the exemption may be invoked on a categorical or 'generic' basis by grouping records into categories and explaining how each category would generally interfere with enforcement proceedings." *Id.* (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 223–24 (1978)). "Whether a document falls within a prescribed exemption" is "a question of law." *Am. Mgmt. Serv.*, 703 F.3d at 729.

Upon its receipt of a request for records, an agency has 20 working days to determine "whether to comply" with that request and "immediately notify the person making" the request of the agency's decision and its reasons for that decision. *Id.* § 552(a)(6)(A)(i). If an agency denies a request for records, the individual whose request was denied is entitled "to appeal to the head of the agency." *Id.* § 552(a)(6)(A)(iii)(aa). FOIA requires the agency, as a general rule, to adjudicate the appeal within 20 working days. *Id.*, § 552(a)(6)(A)(ii).

In addition to authorizing an administrative appeal, FOIA also creates a federal cause of action for requesters who are improperly denied access to agency records. 5 U.S.C. § 552(a)(4)(B). Section 552(a)(4)(B) authorizes a district court to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* "In the typical case, the requester can file suit only after exhausting this administrative appeal process." *Empower Oversight*, 122 F.4th at 100. Where, however, the agency fails to meet its 20-day deadline for responding to a request for records or for adjudicating an administrative appeal, "the requester is deemed to have exhausted his administrative remedies." *Id.*; 5 U.S.C. § 552(a)(6)(C)(i).

17

"This constructive administrative exhaustion, and resulting ability to begin litigation, is the *exclusive remedy* for the failure of an agency to respond in a timely manner." *Empower Oversight*, 122 F.4th at 100 (emphasis added). As the Fourth Circuit recently explained, "FOIA is not a vehicle by which to bring a collateral attack on the legality or constitutionality of broader agency policy." *Malone v. U.S. Patent & Trademark Office*, 175 F.4th 262, 271 (4th Cir. 2026). Instead, "[i]n FOIA, production of documents is the beginning and end of the claim." *Id.* (cleaned up).

Importantly, "[a] court may enter summary judgment on the basis of agency affidavits attesting that an exemption applies if the affidavit is 'relatively detailed' and 'submitted in good faith.'" *Driggs*, 2026 WL 2235297, at *3 (quoting *Simmons v. U.S. Dep't of Justice*, 796 F.2d 709, 712 (4th Cir. 1986)). "When there is no reason to question the good faith of the agency, then a court is entitled to accept the credibility of the affidavits." *Driggs*, 2026 WL 2235297, at *3 (cleaned up).

### C. The evidence before the Court establishes that the United States is entitled to judgment as a matter of law.

As the evidence establishes, ICE has produced all of the non-exempt records responsive to Plaintiffs' FOIA request and has explained its reasons for the redactions in the produced records. In redacting certain information within the records, Dr. Kenneth Clark's credible affidavit and the agency's *Vaughn* index establish that the agency relied upon FOIA exemptions that authorized or required those redactions. Because Plaintiffs have obtained the relief they sought and because the undisputed evidence establishes that ICE has complied with its

18

responsibilities under FOIA, this Court should grant the United States' motion and enter judgment in favor of ICE.

1. *ICE conducted a careful search for records responsive to Plaintiffs' FOIA request and produced all responsive documents.*

In accordance with the ICE FOIA search protocols described above, ICE FOIA conducted a careful and exhaustive search of records reasonably likely to be responsive to Plaintiffs' FOIA request. ICE FOIA directed two different offices within ICE's Enforcement and Removal Operation unit to search for the June 9, 2025, email memorandum related to the Alternatives to Detention program, check-ins, and the directive to use GPS ankle or wrist monitors for non-detained individuals, along with any other records related to that memorandum or its implementation. ICE FOIA determined that the two offices likely to contain those records were the Field Offices Division and the Non-Detained Management Division. The points of contact in those offices coordinated and directed a search for responsive records. And those searches yielded the June 9 email memorandum, along with two other emails describing changes to or the operation of the Alternatives to Detention program.

Consistently with ICE FOIA's search-and-production protocols, ICE FOIA coordinated a search of records maintained by two program divisions within Enforcement and Removal Operations and processed the responsive records to ensure that redactions were applied consistent with FOIA and the Privacy Act and that all "reasonably segregated non-exempt information [was] released." Ex. 1 ¶ 14. ICE then produced the records to Plaintiffs in July, even though ICE FOIA suffered

a lapse in funding that greatly disrupted its ability to process or respond to FOIA requests between mid-February and the end of April of this year. Although ICE FOIA determined that significant redactions of the body of each of the emails were warranted or required under FOIA exemptions, a review of the produced records makes clear that ICE reviewed each of the records and carefully assessed language as exempt or non-exempt under FOIA. And ICE produced all of the records with non-exempt language unredacted.

2.  *ICE properly withheld information under Exemption 6 and 7(C).*

As described above, the Freedom of Information Act generally requires the disclosure of agency records, but subsection (b) of FOIA exempts from an agency's duty to disclose certain types of records. *See* 5 U.S.C. § 552(b). Two of these categories are described in Exemptions 6 and 7(C). Exemption 6 provides that the FOIA duty to disclose does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. *Id.* § 552(b)(6). Exemption 7(C) applies to "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).

Applying these exemptions, ICE properly redacted from the records disclosed to Plaintiffs the email addresses and personally identifiable information of ICE personnel. Ex. 1 ¶ 44; Ex. A at 2, 4, 6. This information falls squarely within the exemption's application to "personnel" files and "similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." As Dr. Clark,

Assistant Director of ICE's Office of Information Governance and Privacy, credibly explained, ICE employees have a strong privacy interest in their contact and personally identifiable information because, particularly in light of the 400% increase in threats of harm to ICE employees since February of 2025, disclosure of this information could result in threats to the employees' life or safety or expose them to identity theft. *See* Ex. 1 ¶¶ 45–46; Ex. A at 2, 4, 6. ICE FOIA also reasonably determined that disclosure of ICE employees' personally identifiable information "serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities." Ex. A at 2, 4, 6. Because Exemptions 6 and 7(C) plainly apply to this information and its disclosure would not serve the purpose of disclosing agency information that is "necessary to an informed electorate," *Coleman*, 714 F.3d at 818, FOIA authorizes the agency's withholding of this information.

The United States has satisfied its burden when "measured by a standard of reasonableness." *Zaid*, 96 F.4th at 704. Through Dr. Clark's affidavit and the agency's *Vaughn* index, ICE credibly and specifically explained why the disclosure of this information could harm its employees and why its disclosure would not serve FOIA's purpose. Under the standard recently described by the Fourth Circuit in *Driggs*, the United States satisfied its burden to reasonably apply FOIA's exemptions. *See Driggs*, 2026 WL 2235297, at *3. The United States has, therefore, established as a matter of law that it has reasonably and properly applied FOIA's Exemptions 6 and 7(C).

### 3. *ICE properly withheld information under Exemption 7(F).*

FOIA Exemption (7)(F) applies to "records or information compiled for law enforcement purposes" that "could reasonably be expected to endanger the life or physical safety of any individual." *Id.* § 552(b)(7)(F). ICE explains in its *Vaughn* index why it determined that Exemption (7)(F) requires the redaction of its employees' personal information in each of the produced emails, and those explanations exceed the standard described in *Driggs*.

ICE reasonably determined that Exemption 7(F) requires the redaction of employee personal information in all three of the emails. The March 7, 2025, email concerns "internal procedures" related to Alternatives to Detention "A-Team Operations and responsibilities," including criteria that applies to the evaluation, eligibility, and enrollment into the Alternatives to Detention Intensive Supervision Appearance Program. Ex. A at 4. The email also describes security measures and protocols related to that program. Ex. A at 4. The June 9 email describes the "latest procedures and policies on referring aliens to the Alternatives to Detention Intensive Supervision Appearance Program." Ex. A at 4. Third and finally, the October 10 email describes the "primary responsibilities" of the Alternatives to Detention A-Teams and programs employed to identify aliens in violation of the program and to monitor the release of aliens" placed in the program. Ex. A at 3; Ex. 1 ¶ 55.

ICE credibly explained that aliens enrolled in the Alternatives to Detention Intensive Supervision Appearance Program who are subject to an executable final

order of removal or who otherwise have violated the terms of their release "would certainly have a motive" to threaten or target ICE employees "who have designed the . . . program" or who have "been involved in the changes made to the reporting requirements for aliens assigned" to the program. Ex. A at 3, 5, 7. Dr. Clark explained that since February of 2025, ICE personnel have experienced a 400% increase in threats to their safety, with employees of the Enforcement and Removal Operations office particularly targeted for harassment and threats to their safety and life. Ex. A at 3, 5, 7; Ex. 1 ¶ 63. Dr. Clark also explained that ICE has been designated as a "Security/Sensitive Agency" under the Office of Management and Budget's Data Release Policy. Ex. 1 ¶ 59. This designation recognizes that ICE employees are "subject to heightened risk of harassment or attack" because of "their employment with ICE." Ex. 1 ¶ 59. These potential threats mean that the disclosure of personal information of the employees identified in the email "could reasonably be expected to endanger" their life or physical safety, requiring its redaction. 5 U.S.C. § 552(b)(7)(F). And under Exemption 7(F), this risk to physical safety is "an absolute ban to release." Ex. A at 3, 5, 7.

4.      *ICE properly withheld information under Exemption 7(E).*

Exemption 7(E) of FOIA applies to "records or information compiled for law enforcement purposes" that would disclose techniques, procedures, or guidance for law-enforcement investigations or prosecutions, "if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7). The Fourth Circuit has recognized that "'even for well-known techniques or procedures,

23

Exemption 7(E) protects information that would reveal facts about such techniques or their usefulness that are not generally known to the public,' including details of their use or execution, 'as well as other information when disclosure could reduce the effectiveness of such techniques.'" *Grey v. Alfonso-Royals*, 140 F.4th 173, 179 (4th Cir. 2025) (quoting *Broward Bulldog, Inc. v. U.S. Dep't of Just.*, 939 F.3d 1164, 1191 (11th Cir. 2019)). The Fourth Circuit has also held that this exemption applies to "law enforcement techniques and procedures without requiring the government to show that disclosure can reasonably be expected to risk circumvention of the law." *Id.* The requirement that the disclosure could reasonably be expected to risk circumvention of the law applies only to the disclosure of "guidelines," not to the disclosure of "techniques and procedures." *Id.*

ICE properly applied Exemption 7(E) and excluded portions of each of the three emails it produced, related to techniques, procedures, and guidelines applicable to the Alternatives to Detention program. *See* Ex. A at 3, 5, 7. Each of the emails describe facets of the Alternatives to Detention Intensive Supervision Appearance Program criteria, including procedures for the evaluation, eligibility, and enrollment into the program (March 7 email); information about security measures and protocols (March 7 email); procedures and policies governing the referral of aliens to the program, policies governing the A-Teams (June 9 email), and techniques for monitoring the release of aliens and identifying program violators (October 10 email). Ex. A at 3, 5, 7. ICE explains in its *Vaughn* index that the disclosure of this information "would allow the circumvention" of the program

and the law" by revealing techniques and procedures that could allow program participants to obtain release, circumvent monitoring, evade security measures, disrupt immigration-enforcement operations.  Ex. A at 3, 5, 7.

ICE has credibly explained why the disclosure of all of the redacted information "would generally interfere with enforcement" of its immigration laws. *Zaid*, 96 F.4th at 704.  FOIA does not require perfect clairvoyance by the agency or a description of the materials withheld more specific than ICE provided to Plaintiffs.  *See id.*  As the Fourth Circuit explained just last week, "the law only requires that [ICE] fairly describe the content of the material withheld and adequately state its grounds for nondisclosure."  *Driggs*, 2026 WL 2235297, at *4 (cleaned up).  "Requiring more would risk disclosure of the very information [ICE] seeks to protect."  *Id.*  Because ICE has satisfied FOIA's standard of reasonableness as described in *Zaid* and *Driggs*, it has properly applied Exemptions 6, 7(E), and 7(F) as a matter of law.

**CONCLUSION**

Because the facts alleged in Plaintiffs' complaint, along with the exhibits provided by both parties, establish that ICE has released all of the non-exempt records Plaintiffs requested, the United States is entitled to judgment as a matter of law as to each of Plaintiffs' FOIA claims.  This Court should, therefore, grant the United States' motion for summary judgment.

Respectfully submitted, this 13th day of August, 2026.

RUSS FERGUSON
UNITED STATES ATTORNEY

s/Amy E. Ray
Assistant United States Attorney
N.C. Bar No. 22762
Room 233, US Courthouse
100 Otis Street
Asheville, NC 28801
Tel: 828-259-0662
Fax: 828-271-4327
E-Mail: Amy.Ray@usdoj.gov