UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NORTH

CAROLINA

| | |
|---|---|
| CAROLINA MIGRANT NETWORK, AMICA CENTER FOR IMMIGRANT RIGHTS,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Defendant. | Case No. 3:26-cv-28 |

**<u>DECLARATION OF KENNETH N. CLARK, Ph.D.</u>**

I, Kenneth N. Clark, Ph.D., pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Assistant Director of the Office of Information Governance and Privacy ("OIGP") at U.S. Immigration and Customs Enforcement ("ICE"), a component of the U.S. Department of Homeland Security ("DHS"). I have held the Assistant Director position since August 18, 2019. Prior to this position, I served as Deputy Assistant Executive Director for the Law

GOVERNMENT EXHIBIT

1

1

Enforcement Information Sharing Initiative in the Homeland Security Investigations directorate.

2. OIGP oversees the management, sharing, protection, and disclosure of ICE data and information in accordance with law, policy, and standards. OIGP implements the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, at ICE and collaborates with ICE and DHS partners to build privacy protections into ICE programs and systems and to develop data governance solutions.

3. OIGP is comprised of two branches: the ICE FOIA Unit and the ICE Privacy Unit. As Assistant Director, I oversee both branches. The ICE FOIA Director leads the ICE FOIA Unit and reports to me, and ICE FOIA staff are organizationally located within that unit in OIGP. Through the ICE FOIA Director, I receive regular briefings on FOIA staffing levels, workload, backlog, and litigation demands, and I am involved in decisions regarding FOIA resource allocation and prioritization. As a result, I am familiar with the day-to-day operations and litigation workload of the ICE FOIA Office.

4. I make this declaration in support of ICE's Motion for Summary Judgment in the above-captioned action. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

5. This declaration provides a description of how ICE received Plaintiffs' FOIA request, how ICE searched for and processed records in response to Plaintiffs' FOIA request, and how ICE disclosed records located in response to Plaintiffs' FOIA request.

6. In addition, in accordance with the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration explains the basis for withholding portions of the requested

2

information pursuant to FOIA Exemptions (b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F). **ICE's** *Vaughn* **Index is attached as Exhibit A**.

## I. ICE'S STANDARD PROCEDURE FOR INITIATING SEARCHES IN RESPONSE TO FOIA REQUESTS

7. When the ICE FOIA Office receives a FOIA request, the intake staff evaluates it to determine if it is a proper FOIA request per DHS FOIA regulation 6 C.F.R. § 5.3. Generally, a FOIA request is considered proper and in compliance with DHS regulations if it reasonably describes the records sought and the records are under ICE's purview.

8. Proper FOIA requests are entered into a database known as Fearers and assigned a case tracking number. Based upon the requestor's description of the records being sought and ICE FOIA's knowledge of the various program offices' missions, the ICE FOIA Office identifies the program office(s) likely to possess responsive records and task the appropriate program office(s) to conduct the necessary searches.

9. ICE records are maintained by leadership offices and/or within ICE directorates, including but not limited to, the Office of Public Affairs ("OPA"), Enforcement and Removal Operations ("ERO"), Homeland Security Investigation ("HIS"), the Office of Professional Responsibility ("OPR), the Office of the Director ("OD"), Office of the Principal Legal Advisor ("OPLA"), and the Chief Financial Officer ("CFO"). The program offices are typically staffed with a designated point of contact (POC) who is the primary person responsible for communications between that program office and the ICE FOIA Office. Each POC is a person with detailed knowledge about the operations of his/her respective program office.

10. Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs within each of those program offices with a copy of the FOIA request and

3

instructs them to conduct a search for responsive records. The POCs then review the FOIA request, along with any case-specific instructions that may have been provided. Based on their experience and knowledge of their program office practices and activities, the POCs will forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any. Consistently with the ICE FOIA Office's instructions, the POCs direct the individuals and component offices to conduct searches of their file systems, including both paper files and electronic files, which in their judgment would most likely be the files to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn, provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness and the application of appropriate FOIA Exemptions.

11. ICE employees maintain records in several ways. ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records. ICE employees may store electronic records on their individual computer hard drives, their program office's shared drive (if the office uses one), DVDs, CDs, and/or USB storage devices. The determination of whether or not these electronic locations must be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee maintains his/her files.

12. Additionally, all ICE employees have access to e-mail. ICE uses the Microsoft Outlook e-mail system. Each ICE employee stores his/her files in the way that works best for that

particular employee. ICE employees use various methods to store their Microsoft Outlook e-mail files - some archive their files monthly, without separating by subject; others archive their e-mail by topic or by program; still others may create PST files of their emails and store them on their hard drive or shared drive.

13. Records received by the ICE FOIA Office from the program office POCs are assigned to a FOIA processor who determines whether or not the records are responsive to the FOIA request. If the records are responsive, the FOIA processor will redact information pursuant to the FOIA or Privacy Act, as appropriate, while simultaneously ensuring that all reasonably segregated non-exempt information is released.

14. Frequently, the ICE FOIA Office must coordinate between multiple program offices to ensure the program office records are properly redacted and information is correctly segregated. Once the ICE FOIA Office completes its coordination efforts and all responsive records have been processed, the ICE FOIA Office releases the responsive records to the requestor.

## II. PROCEDURAL HISTORY OF PLAINTIFFS' FOIA REQUEST AND THE INSTANT LITIGATION

15. This suit stems from Plaintiffs' FOIA request sent to ICE on October 28, 2025. **A true and complete copy of Plaintiffs' FOIA Request to ICE is attached as Exhibit B.**

16. In the October 28, 2025, FOIA Request, Plaintiffs requested the following: records pertaining to the memorandum or guidance issued on or about June 9, 2025, authored or signed by Dawnisha M. Helland, Acting Assistant Director within Enforcement and Removal Operation (ERO), regarding Alternatives to Detention (ATD), check-ins, and the directive to use GPS ankle or wrist monitors for non-detained individuals.

5

17. ICE ERO oversees programs and conducts operations to identify and apprehend removable aliens, to detain these individuals when necessary, and to remove illegal aliens from the United States. ERO prioritizes the apprehension, arrest, and removal of convicted criminals, those who pose a threat to national security, fugitives, recent border entrants, and aliens who thwart immigration controls. ERO manages all logistical aspects of the removal process, including domestic transportation, detention, alternatives to detention programs, bond management, and supervised release.

18. By letter dated November 21, 2025, ICE FOIA acknowledged Plaintiffs' FOIA request and denied Plaintiffs' request for expedited treatment. **A true and complete copy of ICE's November 21, 2025, letter is attached as Exhibit C.** Later that same day, ICE FOIA tasked ERO with conducting searches to locate any records responsive to Plaintiffs' FOIA request.

19. Also on November 21, 2025, Plaintiffs appealed ICE FOIA's decision denying expedited treatment.

20. Three days later, ICE acknowledged Plaintiffs' November 21, 2025, appeal. **A true and complete copy of ICE's November 24, 2025, letter is attached as Exhibit D.**

21. In mid-December of 2025, the Government Information Law Division (GILD) affirmed the decision of the ICE FOIA Office denying expedited processing. **A true and complete copy of GILD's December 19, 2025, letter is attached as Exhibit E.**

22. On December 28, 2025, ICE FOIA notified Plaintiffs that because GILD had affirmed ICE's decision to deny expedited processing on appeal, Plaintiffs' FOIA request would continue to be processed in the order in which it was received, consistent with ICE's normal processing queues. The processing queue is based on the FOIA, 5 U.S.C. § 552, which authorizes agencies to promulgate regulations providing for "multitrack processing" of their FOIA

6

requests – allowing agencies to process requests on a first-in, first-out basis within each queue. **A true and complete copy of GILD's December 19, 2025 letter is attached as Exhibit F.**

23. Meanwhile, ERO conducted a search for responsive records and identified four pages of potentially responsive documents.  ERO sent these documents to ICE FOIA for processing on January 12, 2026.

24. Two days later, without receiving further communication from ICE, Plaintiffs filed their Complaint.

### III.    ICE'S SEARCH FOR RECORDS IN RESPONSE TO PLAINTIFFS' FOIA REQUEST

25. After reviewing Plaintiffs' FOIA requests, the ICE FOIA Office determined that ERO was the program office likely to have responsive records (if such records existed). Upon receipt of Plaintiffs' FOIA Request, the ERO's Information Disclosure Unit point of contact determined that any responsive records would be maintained within ERO's Field Operations Division (FOPS).

26. ERO's FOPS was tasked because they provide guidance to and coordination among all ERO Field Offices throughout the United States.  FOPS oversees, directs, and coordinates all ERO Field Operations activities throughout the nation's field offices and sub-offices in an effort to enhance national security and public safety.

27. Upon receipt of the FOIA Request from the Information Disclosure Unit, a Unit Chief within ERO's FOPS, based on her knowledge and experience handling ERO policy and ERO communications, conducted a search of her desktop and laptop computer, which also includes her shared drive, using the following search terms: "alternatives to detention", "ATD", and "check in." This Unit Chief also searched her Outlook by using the search

7

function with the following search terms: "alternatives to detention", "ATD", and "check in." The Unit Chief searched with these terms because Plaintiffs specifically requested the memorandum or guidance regarding ATD, check-ins, and the directive to use GPS ankle or wrist monitors for non-detained individuals.

28. In total, ERO FOPS found four pages of potentially responsive records. These records were sent to the ICE FOIA Office for review and processing on January 12, 2026. ICE FOIA reviewed the records. Of these four pages, ICE FOIA found all four pages were responsive.

29. After the lawsuit was filed and upon further review, it was determined that not all locations likely to have responsive records had been searched. Therefore, on February 9, 2026, ICE FOIA tasked ERO's Non-Detained Management Division (NDMD) to conduct a search.

30. ICE FOIA directed ERO NDMD to search for responsive records because they provide guidance, coordination, and operational direction to all of ERO's field offices about management of ICE's non-detained docket, including the ATD program, bond management, and juvenile and family residential matters.

31. In total, ERO NDMD found 1 page of potentially responsive documents. This record was sent to the ICE FOIA Office for review and processing on April 16, 2026. ICE FOIA reviewed the one-page record and found it to be responsive.

32. Less than two weeks later and at Plaintiffs' request, ICE FOIA posted a redacted version of the one-page ATD guidance email to the ICE FOIA Library at: https://www.ice.gov/doclib/foia/policy/memoIncreaseInPersonCheckInsContractorOfficesAT D_Participants_06092025.pdf.

33. On July 9, 2026, ICE FOIA issued the first and final release of responsive records to Plaintiffs. This production consisted of five pages of responsive records located as the result

8

of the searches conducted by ERO. As explained above, the search conducted on January 12, 2026, yielded four pages of responsive records, while the search conducted on April 16, 2026, yielded one page of responsive record. Portions of these records were withheld pursuant to FOIA Exemptions (b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F), as described below. The pages were Bates-stamped 2026-ICLI-00024-0001 through 2026-ICLI-00024-0005.

## IV. ORGANIZATION OF THE *VAUGHN* INDEX

34. Pursuant to the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), a *Vaughn* Index accompanies this declaration; the *Vaughn* Index provides a description of each redaction and the corresponding FOIA exemption being applied.

35. The *Vaughn* index is in a table format. The first column contains the bates number prefix for the records produced. The second column contains the bates stamp suffix (page numbers) of the responsive records. The third column describes the category of withholdings taken on the documents (full or partial). The fourth column describes the redaction codes, which are citations to the sections of the FOIA Exemptions. The fifth column describes the underlying records and provides justifications for the asserted exemptions.

36. The *Vaughn* index encompasses the responsive records produced by the program offices. ICE made one production with a total of five pages of responsive records. The records contained in these productions were subject to withholdings pursuant to FOIA Exemptions (b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F).

37. The five pages of records were released to Plaintiffs on July 9, 2026. A completed description of these documents, and the basis for the withholdings of information in them, is detailed in ICE's *Vaughn* index.

## V. DESCRIPTION OF FOIA WITHHOLDINGS APPLIED TO RECORDS PROVIDED TO PLAINTIFFS

**FOIA Exemption 5 U.S.C. § 552(b)(7) Threshold**

38. 5 U.S.C. § 552(b)(7) authorizes an agency withhold records or information compiled for law enforcement purposes.

39. The information for which the ICE FOIA Office asserted Exemption (b)(7) satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act, codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. *See* 8 U.S.C. § 1103.

40. The records and information at issue in this matter pertain to ICE's obligation to accurately portray the work it is doing to further its mission and to allow its employees to conduct work in furtherance of the ICE mission. The records and information at issue in this matter pertain to ICE's obligation to enforce the immigration laws of the United States by investigating non-U.S. individuals who may be present in the United States illegally. In keeping records related to detainees, ICE is acting in the interest of its employees who are working to ensure that these policies are enacted, that they are fair, and that they provide the greatest level of safety to the public and to ICE employees. The records and information located in response to Plaintiffs' FOIA requests were collected and compiled by ICE law enforcement officers for law enforcement purposes and meet the threshold requirement of FOIA Exemption 7.

**FOIA Exemptions 5 U.S.C. § 552(b)(6) & (7)(C)**

41. FOIA Exemption 6 allows the withholding of information found in "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) ("Exemption 6"). Records that apply to or describe a particular individual, including investigative records, qualify as "personnel,"

10

"medical" or "similar files" under Exemption 6. When applying this exemption to responsive documentation, the agency must balance the individual's personal privacy interest against the public need for the information.

42. FOIA Exemption 7(C) similarly protects from disclosure records or information "compiled for law enforcement purposes" if a release of the records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)").

43. When asserting Exemptions 6 and 7(C), ICE balances an individual's personal privacy interest against the public's interest in the disclosure of the information.

44. Here, ICE applied Exemption 6 in conjunction with Exemption 7(C) to protect from disclosure the names, contact information, including domain names and email addresses, and other personally identifiable information ("PII") of ICE employees.

45. Such information, if disclosed to the public or to a third-party requester without the permission of the individual, could cause harm to the individual, expose the individual to identity theft, and may reasonably lead to unwanted contact from persons that might seek to harm the individual.

46. ICE has been designated as a Security/Sensitive Agency under the U.S. Office of Personnel Management's official Data Release Policy, recognizing that ICE employees are subject to heightened risk of harassment or attack by virtue of their employment with ICE. Furthermore, ICE employees have received an increase in threats, intimidation, and personal attacks in recent years due to the nature of their work. Publicly disclosing employees' PII could subject ICE employees to harassment or harm. Additionally, the release of the email addresses, which are not publicized, could expose employees to an increase of cyber threats.

47. ICE determined that the disclosure of the information described above would constitute a clearly unwarranted invasion of personal privacy and thus Exemption 6 applied. In addition, ICE determined that disclosure of this information, which was compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy. Exemption 7(C), therefore, also applied to authorize withholding of the information.

48. Having determined that the individuals identified in the responsive records have a cognizable privacy interest in not having their information released, ICE FOIA then balanced the interest in safeguarding the individuals' privacy from unnecessary public scrutiny against the public's interest in understanding how ICE performs its statutory duties. Exemptions 6 and 7(C) were applied to prevent disclosure of the identities of ICE personnel and their PII. In each instance where Exemptions 6 and 7(C) were applied, the redaction was limited to the name of the individual and all other personally identifiable information, which if released, would not shed any further light as to the operations or activities of ICE. In some redactions, the information surrounding the redactions was released and the limited extent of the redaction is readily apparent from the context of the records.

**FOIA Exemption 5 U.S.C. § 552(b)(7)(E)**

49. FOIA Exemption 7(E) affords protection to law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

50. Here, ICE has applied Exemption 7(E) to law enforcement sensitive information, specifically because disclosure of internal procedures regarding ATD could reasonably be expected to risk circumvention of the law by revealing critical security measures and protocols used to

12

identify ATD program violators, monitor the release of aliens placed in the ATD program, and log information related to their check-ins.

51. Such disclosures could compromise the safety and security of law enforcement personnel by providing individuals with information that could be used to evade security measures, disrupt operations, or understand the metrics the ATD program uses to identify program violators. Additionally, knowledge of the responsibilities of the ATD program and its counterparts would allow program violators or those subject to a final order of removal the ability to modify their behavior, change their daily routines, and minimize or eliminate their social media presence, among other tactics, to evade detection, and therefore, circumvent the enforcement of these laws.

52. Disclosure of the law enforcement sensitive information withheld in the email communications would reveal methods and techniques not generally known to the public that ICE uses for its ATD program. To allow this information to be disseminated to the public would irreparably harm ICE's ability to enforce its immigration policies and to keep the nation safe. If the public were allowed access to this information, then bad actors could utilize this information to change the course of their activities and cause harm.

53. The disclosure of this law enforcement sensitive information also serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory duties.

### FOIA Exemption 5 U.S.C. § 552(b)(7)(F)

54. FOIA Exemption (b)(7)(F) protects records or information compiled for law enforcement purposes when the disclosure of that information could reasonably be expected to endanger

13

the life or physical safety of any individual.  Unlike other FOIA exemptions that protect personal privacy protection, Exemption 7(F) requires no public interest balancing test.

55. Since at least 2001, FOIA Exemption (b)(7)(F) has been used to withhold the identities of law enforcement, customs officers, local law enforcement partners assisting in federal investigations, prison guards, attorneys, support personnel, and third-party witnesses.

56. Recently, the use of (b)(7)(F) was once again upheld in a holding that stated:

"Law enforcement personnel and interviewees fall squarely into the category of persons who warrant protection under exemption 7(F) [because of the] risk of harm to these individuals if they were to be identified, including prejudice to the agents' ability to execute their duties, a chilling effect on the agencies' abilities to confer with third-party individuals, and a risk of targeting and physical danger to all these third parties." *Brown v. FBI,* No. 23-02923, 2025 WL 2651239 (D.D.C. Sept. 16, 2025) (citing *Hammouda v. U.S. Depot of Just. Off. of Info. Polny*, 920 F. Supp. 2d 16, 26 (D.D.C. 2013)).

57. Here, ICE applied Exemption (b)(7)(F) in conjunction with Exemptions 6 and 7(C). Exemption 7(F) protects information compiled for law enforcement purposes, which, if disclosed "could reasonably be expected to endanger the life or physical safety of an individual," such as the personally identifying information of ICE employees. 5 U.S.C. § 552(b)(7)(F).

58. As previously noted, the records were compiled for law enforcement purposes, and they contained names and other identifying information, including a phone number, which would reveal the identity of, and disclose personal information about, law enforcement agents that could reasonably be expected to endanger their life or physical safety.

59. In order to determine whether to disclose the information, ICE considered the 400% increase in threats to their safety since February 2025, specifically with ERO personnel targeted for harassment and threats to their safety and life. Release of these names would reasonably endanger their life or safety because of the increase in threats to ICE personnel. Moreover, ICE has been designated as a Security/Sensitive Agency under the U.S. Office of Personnel Management's official Data Release Policy, recognizing that ICE employees are subject to heightened risk of harassment or attack by virtue of their employment with ICE. Given the sensitivity of ICE's work and mission, identification of ICE employees, and access to sensitive information afforded that position, risks this and other ICE employees being targeted by those who would undermine the critical work conducted by ICE on a daily basis.

## VI. SEGREGABILITY

60. 5 U.S.C. § 552(b) requires that "[a]NY reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

61. ICE conducted a line-by-line review to identify information exempt from disclosure or for which it could apply a discretionary waiver of exemption(s).

62. With respect to the records that were released, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released. ICE did not withhold any non-exempt information on the grounds that it was non-segregable.

I declare under penalty of perjury that the forgoing is true and correct to the best of my

knowledge and belief.

Signed this __5___ day of August 2026.

KENNETH N CLARK

Digitally signed by
KENNETH N CLARK
Date: 2026.08.05
16:34:54 -04'00'

Kenneth N. Clark, Ph.D.
Assistant Director
Office of Information Governance and Privacy
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
500 12th Street, SW, Stop 5009
Washington, DC 20536-5009

16

**CAROLINA MIGRANT NETWORK & AMICA CENTER FOR IMMIGRANT RIGHTS v. ICE**
No. 3:26-cv-00028 (W.D.N.C., filed 01.14.26)

U.S. Immigration and Customs Enforcement (ICE) *Vaughn* Index



| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 2026-ICLI-00024, 0001 | Partial | **Document Title**: Email titled, "Alternatives to Detention Enforcement Teams (A-Teams)," Friday, October 10, 2025, at 08:16 PM<br><br>**Document Description**: This is an email communication from the Office of Executive Associate Director for ERO to the Field Office Directors and Deputy Field Office Directors re-establishing ATD Enforcement Teams (A-Teams) to align with Executive Order 14159, Protecting the American People Against Invasion.<br><br>**Redacted Information:** ICE made partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) to redact the names and emails of ICE law enforcement personnel who were involved in the development and enforcement of ATD A-Team Operations.<br><br>ICE made partial redactions pursuant to FOIA Exemption (b)(7)(F) to redact the names and emails of ICE law enforcement personnel who were involved in the development and enforcement of ATD A-Team Operations.<br><br>ICE made partial redactions pursuant to FOIA Exemption (b)(7)(E) to internal procedures regarding ATD A-Team Operations and responsibilities.<br><br>**FOIA Exemption (b)(6) and (b)(7)(C):** Disclosure of the names and email addresses of the ICE law enforcement personnel would reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives, placing them in danger because targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge, and harming ICE's ability to effectively conduct future investigations. ICE has been designated as a Security/Sensitive Agency under the U.S. Office of Personnel Management's official Data Release Policy, recognizing that ICE employees are subject to heightened risk of harassment or attack by virtue of their employment with ICE. The disclosure of this PII and names serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII and names outweighs any minimal public interest that could possibly exist in the disclosure of this information. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F) |

CAROLINA MIGRANT NETWORK & AMICA CENTER FOR IMMIGRANT RIGHTS v. ICE - *Vaughn* Index (July 2026)

2

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **FOIA Exemption (b)(7)(F):** FOIA Exemption (b)(7)(F) protects records or information compiled for law enforcement purposes that, if released, could reasonably be expected to endanger the life or physical safety of any individual. The redacted information consists of the names of ERO ATD personnel who took part in the development of these ATD polices and are the Points of Contact (POCs) for ATD operations. Aliens who are enrolled in the ATD program who are subject to an executable final order of removal and/or have otherwise violated the terms of release would certainly have a motive to threat or target the ATD POCs and those who have designed the ATD A-Team program. ICE personnel have also had a 400% increase in threats to their safety since February 2025, specifically with ERO personnel targeted for harassment and threats to their safety and life. Release of these names would reasonably endanger their life or safety because of the increase in threats to ICE personnel. As life or physical safety is at risk, Exemption (b)(7)(F) is an absolute ban to release.

**Reason(s) for Redactions: FOIA Exemption (b)(7)(E):** The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is law enforcement sensitive. FOIA Exemption (b)(7)(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Here, ICE has applied Exemption 7(E) to law enforcement sensitive information, specifically because disclosure of internal procedures regarding ATD could reasonably be expected to risk circumvention of the law by revealing critical security measures and protocols used to identify ATD program violators, monitor the release of aliens placed in the ATD program, and log information related to their check-ins. Such disclosures could compromise the safety and security of law enforcement personnel by providing individuals with information that could be used to evade security measures, disrupt operations, or understand the metrics that the ATD A-Team uses to identify program violators. Additionally, knowledge of the responsibilities of the A-Team would allow program violators or those subject to a final order of removal the ability to modify their behavior, change their daily routines, and minimize or eliminate their social media presence, among other tactics, to evade detection, and therefore, circumvent the enforcement of these laws. | |

CAROLINA MIGRANT NETWORK & AMICA CENTER FOR IMMIGRANT RIGHTS v. ICE - *Vaughn* Index (July 2026)

3

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 2026-ICLI-00024, 0003 | Partial | **Document Title**: Email titled, "Referral of Aliens to the Alternatives to Detention Intensive Supervision Appearance Program (ATD-ISAP)," Friday, March 7, 2025, at 03:56 PM<br><br>**Document Description**: This is an email communication from ERO Assistant Directors to all ERO Field Office Personnel explaining the latest procedures and policies on referring aliens to the ATD-ISAP Program.<br><br>**Redacted Information:** ICE made partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) to redact the names and emails of ICE law enforcement personnel who were involved in the development and enforcement of ATD A-Team Operations.<br><br>ICE made partial redactions pursuant to FOIA Exemption (b)(7)(F) to redact the names and emails of ICE law enforcement personnel who were involved in the development and enforcement of ATD A-Team Operations.<br><br>ICE made partial redactions pursuant to FOIA Exemption (b)(7)(E) to internal procedures regarding ATD A-Team Operations and responsibilities.<br><br>**FOIA Exemption (b)(6) and (b)(7)(C):** Disclosure of the names and email addresses of the ICE law enforcement personnel would reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives, placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge, and harming ICE's the ability to effectively conduct future investigations. ICE has been designated as a Security/Sensitive Agency under the U.S. Office of Personnel Management's official Data Release Policy, recognizing that ICE employees are subject to heightened risk of harassment or attack by virtue of their employment with ICE. The disclosure of this PII and names serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII and names outweighs any minimal public interest that could possibly exist in the disclosure of this information. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **FOIA Exemption (b)(7)(F):** FOIA Exemption (b)(7)(F) protects records or information compiled for law enforcement purposes that if released could reasonably be expected to endanger the life or physical safety of any individual. The redacted information consists of the names of ERO ATD personnel who took part in the development of these ATD polices and are the Points of Contact (POCs) for ATD operations. Aliens who are enrolled in the ATD program who are subject to an executable final order of removal and/or have otherwise violated the terms of release would certainly have a motive to threat or target the ATD POCs and those who have designed the ATD program. ICE personnel have also had a 400% increase in threats to their safety since February 2025, specifically with ERO personnel targeted for harassment and threats to their safety and life. Release of these names would reasonably endanger their life or safety because of the increase in threats to ICE personnel. As life or physical safety is at risk Exemption (b)(7)(F) is an absolute ban to release.<br><br>**Reason(s) for Redactions: FOIA Exemption (b)(7)(E):** The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is law enforcement sensitive. FOIA Exemption (b)(7)(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of internal procedures regarding ATD-ISAP, such as criteria for evaluation, eligibility and enrollment, could reasonably be expected to risk circumvention of the law by revealing critical security measures and protocols. Disclosure of this information would allow those who are selected to be enrolled in ATD-ISAP to circumvent the intensive reporting and monitoring requirements that are a part of this program. Specifically, if ATD-ISAP enrollees were aware of the management tools and technologies used to monitor their release, they could adjust their daily routines to proactively circumvent monitoring. Moreover, if ATD-ISAP enrollees were aware of the criteria for enrollment, they could potentially manipulate the basis for their release and, as a result, be subject to less scrutiny upon release. If ATD-ISAP enrollees were aware of what limited technological tools were used to monitor them, they could use pretextual excuses to evade the application and/or enrollment of such tools. Therefore, the knowledge of the ATD-ISAP criteria for monitoring and use of technological tools for monitoring would allow the circumvention of ATD policies and regulations. | |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 2026-ICLI-00024, 0005 | Partial | **Document Title**: Email titled, "Increase of In-Person Check-Ins at Contractor Offices for ATD Participants," Monday, June 9, 2025, at 01:43 PM<br><br>**Document Description**: This is an email communication from the ERO Assistant Directors to all ERO personnel informing them of changes to reporting requirements for aliens assigned to the ATD program.<br><br>**Redacted Information:** ICE made partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) to redact the names and emails of ICE law enforcement personnel who were involved in the development and enforcement of ATD program and the changes to the reporting requirements for aliens assigned to the ATD program.<br><br>ICE made partial redactions pursuant to FOIA Exemption (b)(7)(F) to redact the names and emails of ICE law enforcement personnel who were involved in the development and enforcement of ATD program and the changes to the reporting requirements for aliens assigned to the ATD program.<br><br>ICE made partial redactions pursuant to FOIA Exemption (b)(7)(E) to internal procedures regarding ATD A-Team Operations and responsibilities.<br><br>**FOIA Exemption (b)(6) and (b)(7)(C):** Disclosure of the names and email addresses of the ICE law enforcement personnel would reasonably be expected to constitute an unwarranted invasion of personal privacy by conceivably subjecting personnel to harassment and annoyance in conducting their official duties and in their private lives, placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge, and harming ICE's ability to effectively conduct future investigations. ICE has been designated as a Security/Sensitive Agency under the U.S. Office of Personnel Management's official Data Release Policy, recognizing that ICE employees are subject to heightened risk of harassment or attack by virtue of their employment with ICE. The disclosure of this PII and names serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. Furthermore, the privacy interest in this PII and names outweighs any minimal public interest that could possibly exist in the disclosure of this information. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F) |

CAROLINA MIGRANT NETWORK & AMICA CENTER FOR IMMIGRANT RIGHTS v. ICE - *Vaughn* Index (July 2026)

6

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **FOIA Exemption (b)(7)(F):** FOIA Exemption (b)(7)(F) protects records or information compiled for law enforcement purposes that if released could reasonably be expected to endanger the life or physical safety of any individual. The redacted information consists of the names of ERO ATD personnel who took part in the development of these ATD polices and are the Points of Contact (POCs) for ATD operations. Aliens who are enrolled in the ATD program who are subject to an executable final order of removal and/or have otherwise violated the terms of release would certainly have a motive to threat or target the ATD POCs and those who have designed the ATD program or been involved in the changes made to the reporting requirements for aliens assigned to the ATD program. ICE personnel have also had a 400% increase in threats to their safety since February 2025, specifically with ERO personnel targeted for harassment and threats to their safety and life. Release of these names would reasonably endanger their life or safety because of the increase in threats to ICE personnel. As life or physical safety is at risk Exemption (b)(7)(F) is an absolute ban to release.<br><br>**Reason(s) for Redactions: FOIA Exemption (b)(7)(E):** The information in these pages was properly withheld under FOIA exemption (b)(7)(E) because it is law enforcement sensitive. FOIA Exemption (b)(7)(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. Exemption (b)(7)(E) is asserted because disclosure of changes made to internal procedures regarding reporting requirements for aliens assigned to the ATD program could reasonably be expected to risk circumvention of the law by revealing critical security measures and protocols for the frequency of check-ins; scrutiny given during check-ins; and questions, affect, and observations conducted during check ins. Additionally, knowledge of ATD in-person reporting requirements could allow aliens to modify their behaviors based on the frequency of random, non-scheduled in-person check-ins were required, how to contact proxies to vouch for their employment or good conduct, and how to modify their social behaviors to minimize the appearance of high-risk conduct that would lead to a return to detention or removal, among other tactics, to evade detection, and therefore, circumvent the enforcement of these laws. | |




October 28, 2025

Via SecureRelease

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, D.C. 20536-5009

**Re: FOIA Request for June 9, 2025, ICE/ERO Memorandum on ATD Check-Ins and GPS Monitoring**

Dear FOIA Officer,

The Amica Center for Immigrant Rights (Amica Center) and the Carolina Migrant Network (CMN) (together, the Requestors) are nonprofit, public interest organizations engaged in representation, research, education, and dissemination of information on immigration enforcement and civil liberties. Requestors submit this request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Department of Homeland Security's FOIA regulations, 6 C.F.R. Part 5.

Unless otherwise stated above, the date range for this request is June 1, 2025, through November 1, 2025.

<div align="center">

**Records Requested**

</div>

Please produce the following records, in their entirety:

1. The memorandum or guidance issued on or about June 9, 2025, authored or signed by Dawnisha M. Helland, Acting Assistant Director within Enforcement and Removal Operations (ERO), regarding Alternatives to Detention (ATD), check-ins, and the directive to use GPS ankle or wrist monitors for non-detained individuals.

2. Any accompanying implementation instructions, appendices, standard operating procedures, or field guidance transmitted with the memorandum, as well as any later memoranda, directives, or emails that modify, supersede, or rescind it.

<div align="center">

**Preferred Form of Production**

</div>

Please provide all records in electronic form via email in their native format.

<div style="border:2px solid blue; background:yellow; text-align:center">

**GOVERNMENT EXHIBIT**

**B**
_____

</div>

**Helpful Identifiers and Likely Custodians**

Based on public reporting on July 24, 2025, by The Washington Post,[1] the memorandum is dated June 9, 2025, and is attributed to Acting Assistant Director Dawnisha M. Helland in ERO's Non-Detained Management/ATD leadership. Likely custodians include: ERO Headquarters (Non-Detained Management Division; ATD Unit), Field Operations Directorate, and the ERO front office. Please search Outlook mailboxes, Teams/SharePoint sites, and any policy or directive repositories.

**Request for Public-Interest Fee Waiver (5 U.S.C. § 552(a)(4)(A)(iii)) and Fee Category**

For the purposes of the fee waiver category, Amica Center and CMN are representatives of the news media.

CMN is a 501(c)(3) nonprofit organization located in Charlotte, NC, whose core mission is to provide legal services for individuals in removal proceedings. CMN "provide[s] legal education on the US immigration System and empower[s] immigrant communities to participate in everyday and civic life." CMN "envision[s] a world of empowered, self-determined, organized communities free from fear of family separation."[2] CMN regularly disseminates information to the public about immigration enforcement practices in North Carolina. In addition to providing direct representation to immigrant communities, CMN publishes critical information on noncitizen rights, issues press releases, and shares analyses with journalists, policymakers, and the public through newsletters, its website, and social media channels. As such, CMN qualifies as a "representative of the news media" under 5 U.S.C. § 552(a)(4)(A)(ii)(II).

Amica Center is a 501(c)(3) nonprofit organization that provides legal services to noncitizens in ICE custody across the country. Originally started as a project of the Washington Lawyers' Committee for Civil Rights and Urban Affairs, Amica Center became an independent non-profit organization in 1999. Amica Center's mission is to confront the impact that the unjust immigration system has on our clients and communities through direct legal representation, impact litigation, education, and client-centered advocacy. In addition to providing direct representation to immigrant communities, Amica Center publishes critical information on noncitizen rights, issues press releases, and shares analyses with journalists, policymakers, and the public through newsletters, its website, and social media channels. As such, Amica Center qualifies as a "representative of the news media" under 5 U.S.C. § 552(a)(4)(A)(ii)(II).

Requestors are entitled to a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii), and the Department of Justice's implementing regulations. Under FOIA, a "representative[ ] of the news media" is defined as "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that

---

[1] ICE moves to shackle some 180,000 immigrants with GPS ankle monitors - The Washington Post
[2] https://carolinamigrantnetwork.org/

2

work to an audience." *Id*. Requestors are nonprofit legal services organizations dedicated to immigrant rights, including noncitizens enrolled in ATD. In the alternative, please classify the Requestors in the "representative of the news media" and/or "educational institution" fee category pursuant to 6 C.F.R. § 5.11 and assess only duplication after the first 100 pages, if applicable. If any fees are expected to exceed $25, please notify me in advance and pause processing pending confirmation.

### Request for Expedited Processing (6 C.F.R. § 5.5(e))

We request expedited processing under 5 U.S.C. § 552(a)(6)(E) because the subject matter of this request is of urgent public interest: ICE's plans to deploy harmful GPS surveillance technology against hundreds of thousands of non-citizens in communities all across the country.

Requestors will turn the ICE's raw materials into a distinct work that includes a deeper understanding of the impact of ATD on the noncitizen community. Requestors are nonprofit immigrant rights organizations that regularly disseminate information to the public through reports, media partnerships, and community education. The requested records concern ICE's efforts to dramatically expand its use of GPS monitoring technology, a matter of urgent and widespread public concern. Disclosure will significantly contribute to public understanding of government operations that directly affect immigrant communities and the broader public. This scope of activities qualifies for expedited treatment. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding nonprofit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information"). *See, e.g., Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003). FOIA legislation recognized "the value in hastening release of certain information." *Edmonds v. FBI*, 417 F.3d 1319, 1324 (D.C. Cir. 2005). The public would lose the value of release in this matter if the release is not expedited. In this case, delay in complying with this expedited FOIA request is, as Congress recognized, "tantamount to denial." H.R.Rep. No. 93–876, at 6 (1974), 1974 U.S.Code Cong. & Admin. News, pp. 6267, 6271.

We certify that the foregoing is true and correct to the best of our knowledge and belief.

### Segregability and Vaughn Index

If you determine that portions of any record are exempt, please release all reasonably segregable non-exempt material. For any withholdings, please provide a description sufficient to allow assessment of the claimed exemptions and a Vaughn index.

Thank you for your attention to this request. Please direct all correspondence to us at the contact information below.

Sincerely,

s/ F. Evan Benz

F. Evan Benz

Amica Center for Immigrant Rights

1025 Connecticut Ave NW Ste. 701

Washington, DC 20036

Phone: (202) 869-3984

evan@amicacenter.org


s/ Becca O'Neill

Becca O'Neill

Carolina Migrant Network

PO Box 11839

Charlotte, NC 28220

Phone: (704) 457-5269

becca@carolinamigrantnetwork.org

4

| | |
|---|---|
| **From:** | ice-foia@ice.dhs.gov |
| **To:** | evan@caircoalition.org |
| **Subject:** | ICE FOIA 2026-ICFO-03195 |
| **Date:** | Friday, November 21, 2025 1:07:07 PM |

11/21/2025

F. Evan Benz
Amica Center for Immigrant Rights
Washington, District of Columbia 20036

RE:  ICE FOIA Case Number 2026-ICFO-03195

Dear Requester:

This acknowledges receipt of your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated 10/28/2025, and to your request for expedited treatment. Your request was received in this office on 10/28/2025. Specifically, you requested records pertaining to the memorandum or guidance issued on or about June 9, 2025, authored or signed by Dawnisha M. Helland, Acting Assistant Director within Enforcement and Removal Operation (ERO), regarding Alternatives to Detention (ATD), check-ins, and the directive to use GPS ankle or wrist monitors for non-detained individuals. .

Your request for expedited treatment is hereby denied.

Under the DHS FOIA regulations, expedited processing of a FOIA request is warranted if the request involves "circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," 6 C.F.R. § 5.5(e)(1)(i), or "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information," 6 C.F.R. § 5.5(e)(l)(ii).  Requesters seeking expedited processing must submit a statement explaining in detail the basis for the request, and that statement must be certified by the requester to be true and correct.  6 C.F.R. § 5.5(e)(3).

Your request for expedited processing is denied because you do not qualify for either category under 6 C.F.R. § 5.5(e)(1).  You failed to demonstrate a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally.  Your letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, ICE processes FOIA requests according to their order of receipt. Although ICE's goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10- day extension of this time period. As your request seeks numerous documents that will necessitate a thorough and wide-

**GOVERNMENT EXHIBIT**

**C**

ranging search, ICE will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you care to narrow the scope of your request, please contact our office. We will make every effort to comply with your request in a timely manner.

Provisions of the FOIA allow us to recover part of the cost of complying with your request.  We shall charge you for records in accordance with the DHS Interim FOIA regulations as they apply to non-commercial requesters.  As a non-commercial requester, you will be charged 10 cents per page for duplication; the first 100 pages are free, as are the first two hours of search time, after which you will pay the per quarter-hour rate ($4.00 for clerical personnel, $7.00 for professional personnel, $10.25 for managerial personnel) of the searcher.  We will construe the submission of your request as an agreement to pay up to $25.00. You will be contacted before any further fees are accrued.

If you deem the decision to deny expedited treatment of your request an adverse determination, you have the right to appeal.  Should you wish to do so, you must send your appeal and a copy of this letter, within 90 days of the date of this letter following the procedures outlined in the DHS FOIA regulations at 6 C.F.R. Part 5 § 5.5(e)(2). You may submit your appeal electronically at GILDFOIAAppeals@ice.dhs.gov or via regular mail to:

> U.S. Immigration and Customs Enforcement
> Office of the Principal Legal Advisor
> U.S. Department of Homeland Security
> 500 12th Street,, S.W., Mail Stop 5900
> Washington, D.C. 20536-5900

Your envelope and letter should be marked "FOIA Appeal."  Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

ICE has queried the appropriate program offices within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

If you have any questions, please contact the FOIA office or Daniel Edgington, FOIA Public Liaison at 500 12th St. SW Stop 5009 Washington, DC 20536-5009 or (866) 633-1182. Additionally, you have a right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974.  You may contact OGIS as follows:  Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448.

Your request has been assigned tracking number 2026-ICFO-03195. Please use this number in future correspondence.

Sincerely,

ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009

| From: | ice-foia@ice.dhs.gov |
|---|---|
| To: | evan@caircoalition.org |
| Subject: | ICE FOIA 2026-ICAP-00047, 2026-ICFO-03195 |
| Date: | Monday, November 24, 2025 10:50:07 AM |

11/24/2025

F. Evan Benz
Amica Center for Immigrant Rights
Washington, District of Columbia 20036

RE:  ICE FOIA Case Number 2026-ICAP-00047

Dear Requester:

The Department of Homeland Security has received your letter appealing the adverse determination of your Freedom of Information Act/Privacy Act (FOIA/PA) request by U.S. Immigration and Customs Enforcement. Your appeal was dated and received on 11/21/2025.

The Government Information Law Division acknowledges your appeal request of and is assigning it number 2026-ICAP-00047 for tracking purposes.  Please reference this number in any future communications about your appeal.

A high number of FOIA/PA requests have been received by the Department.  Accordingly, we have adopted the court-sanctioned practice of generally handling backlogged appeals on a first-in, first-out basis.   While we will make every effort to process your appeal on a timely basis, there may be some delay in resolving this matter.  Should you have any questions concerning the processing of your appeal, please contact Daniel Edgington ICE FOIA Office/Public Liaison at (866) 633-1182 or at 500 12th St., SW Washington, DC 20536-5009.

Sincerely,



Sara Jazayeri
Chief
Government Information Law Division
ICE Office of the Principal Legal Advisor
U.S. Department of Homeland Security



December 19, 2025

F. Evan Benz
Amica Center for Immigrant Rights
1025 Connecticut Ave., NW, Ste. 701
Washington, D.C. 20036

**RE: 2026-ICAP-00047, 2026-ICFO-03195**

Dear Mr. Benz:

This is in response to your email dated and received on November 21, 2025, appealing the U.S. Immigration and Customs Enforcement's (ICE) Freedom of Information Act (FOIA) Office's denial of your request for expedited processing and a fee waiver to your FOIA request dated October 28, 2025, seeking records pertaining to the following:

> The memorandum or guidance issued on or about June 9, 2025, authored or signed by Dawnisha M. Helland, Acting Assistant Director within Enforcement and Removal Operations (ERO), regarding Alternatives to Detention (ATD), check-ins, and the directive to use GPS ankle or wrist monitors for non-detained individuals.

> Any accompanying implementation instructions, appendices, standard operating procedures, or field guidance transmitted with the memorandum, as well as any later memoranda, directives, or emails that modify, supersede, or rescind it.

*Expedited Treatment*

In your request, you raised one condition to rationalize expedited processing, that ICE plans to deploy harmful GPS surveillance technology against hundreds of thousands of non-citizens in communities all across the country.

By letter dated November 21, 2025, the ICE FOIA Office acknowledged receipt of your FOIA request and denied your request for expedited processing. With respect to the latter, the ICE FOIA office stated:

> Your request for expedited processing is denied because you do not qualify for either category under 6 C.F.R. § 5.5(e)(1). You failed to demonstrate a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally. Your letter



GOVERNMENT
EXHIBIT

E

www.ice.gov

was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards.

You have appealed the denial of expedited treatment of your FOIA request. In your appeal, you provide no additional rationale for expedited processing of your FOIA request.

On appeal, ICE employs a *de novo* review of the denial of expedited treatment of your FOIA request. As a requester, you bear the burden under the FOIA of showing that your request satisfies the requirements for expedited treatment.

The DHS FOIA Regulations at 6 C.F.R. § 5.5(e) provide the following four situations in which expedited processing is warranted:

(i) Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;
(ii) An urgency to inform the public about an actual or alleged federal government activity, if made by a person who is primarily engaged in disseminating information;
(iii) The loss of substantial due process rights; or
(iv) A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

The first situation in which processing on an expedited basis is appropriate requires a showing of circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual. You have not provided any specific evidence demonstrating that standard processing of the request would pose an imminent threat to the life or physical safety of any particular individual.

The second situation in which processing on an expedited basis is appropriate requires an "urgency to inform the public about an actual or alleged federal government activity." This determination hinges on three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity. *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 29 (D.D.C. 2004). In this case, you failed to demonstrate an urgency to inform the public about a federal government activity because the first and second factors are not satisfied. First, you provided no evidence to support that the ATD Memo is a matter of current exigency to the American public. You also failed to meet your burden to show that delaying a response would compromise a significant recognized interest. You failed to satisfactorily explain why this is the case or why the documents you request would empower the public to participate in the democratic process.

With regard to the third situation in which processing on an expedited basis is appropriate, a request may be expedited if it is shown that substantial due process rights of the requester would be impaired by the failure to process immediately, and that the information sought is not otherwise available. It is not sufficient, however, for a requester to merely allege that requested records are needed in connection with some judicial or administrative proceeding;

rather, the immediate use of the FOIA must be shown to be critical to the preservation of a substantial right.  Here, you did not argue that you, the requester, would suffer a loss of substantial due process rights absent expedited processing of your FOIA request. Thus, your request for expedited treatment fails under 6 C.F.R. § 5.5(e)(1)(iii).

Finally, with regard to the fourth situation in which processing on an expedited basis is appropriate, you claim that there is an urgent need to provide the public with information about the ATD memo but provided no evidence to support that there is widespread and exceptional media interest in this issue. In addition, there does not appear to be widespread media interest for the specific documents you are seeking through this FOIA request. Accordingly, your request for expedited processing fails under 6 C.F.R. § 5.5(e)(1)(iv).

Therefore, ICE affirms the decision of the ICE FOIA Office to deny your request for expedited processing.

*Fee Waiver*

The ICE FOIA Office is not currently assessing fees. As a result, the agency is not making a determination on the assessment of fees, as the issue is not yet ripe for review. However, upon a complete review of the administrative record, ICE has determined that the ICE FOIA Office has yet to provide a final response to your FOIA request. We are therefore remanding your appeal to the ICE FOIA Office for the completion of processing, including tasking to the appropriate agency/office(s) to obtain any responsive documents. The ICE FOIA Office will respond directly to you.

Should you have any questions regarding this appeal decision, please contact ICE at ice-foia@dhs.gov.  In the subject line of the email please include the word "appeal," your appeal number, which is **2026-ICAP-00047** and the FOIA case number, which is **2026-ICFO-03195**.

Sincerely,

*/s/* Zachary H. Kling

*for*   Sara Jazayeri
Chief
Government Information Law Division
ICE Office of the Principal Legal Advisor
U.S. Department of Homeland Security

cc:     The ICE FOIA Office

| | |
|---|---|
| **From:** | ice-foia@ice.dhs.gov |
| **To:** | evan@caircoalition.org |
| **Subject:** | ICE FOIA 2026-ICAP-00047 |
| **Date:** | Sunday, December 28, 2025 2:39:14 PM |

12/28/2025

F. Evan Benz
Amica Center for Immigrant Rights
Washington, District of Columbia 20036

RE:  ICE FOIA Case Number 2026-ICAP-00047

Dear Requester:

This letter is the final response to your Freedom of Information Act (FOIA) Appeal on remand. You had appealed an adverse determination of your request dated 11/21/2025.  You have requested appeal denial expedited processing.

The Government Information Law Division (GILD) affirms ICE's decision to deny expedited processing. Therefore, your underlying FOIA request will continue to be processed under FOIA Request No. 2026-ICFO-03195 in the order in which it was received, consistent with ICE's normal processing queues. The appeal is therefore administratively closed.
For any future correspondence or inquiries regarding this matter, please refer only to FOIA Request No. 2026-ICFO-03195.

If you have any questions please contact FOIA Public Liaison Daniel Edgington at (866) 633-1182 or 500 12th St., SW Stop 5009 Washington, DC 20536-5009.

Sincerely,

ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009



GOVERNMENT
EXHIBIT

**F**
_____