**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

CAROLINA MIGRANT NETWORK, et al.,

Plaintiffs,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

Defendant.

**CASE NO. 3:26-CV-28**

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR CONSOLIDATED RESPONSE AND CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiffs submit this consolidated response to Defendant's motion for summary judgment and cross-motion for summary judgment under Federal Rule of Civil Procedure 56. Defendant has not met its burden under FOIA and therefore is not entitled to judgment as a matter of law. Therefore, this Court should deny Defendant's motion and grant Plaintiffs' motion for summary judgment.

## STATEMENT OF UNDISPUTED FACTS

In July of 2025, the Washington Post reported that ICE's Acting Assistant Director Dawnisha M. Helland had issued a new policy memorandum regarding ICE's "Alternatives to Detention" ("ATD") program on June 9, 2025 ("the Helland Memo.") ECF No. 1, Complaint, ¶ 8. According to the Washington Post article, the Helland Memo "ordered staff to place ankle monitors on *all people* enrolled in the agency's [ATD] program 'whenever possible[.]'" *Id.*, ¶ 8. The Helland Memo also required, for the first time ever, that pregnant women wear "wrist-worn tracking devices." *Id.* Defendant failed to timely respond to Plaintiffs' FOIA request seeking a copy of the

Helland Memo and related materials. *Id.*, ¶¶ 22–32. As Defendant concedes, it had not published the Helland Memo by the time of Plaintiffs' filing of the instant suit. *See id.*, ¶ 9; *cf.* ECF No. 20 at 8.

Plaintiffs sought relief from this Court requiring Defendant to produce the memorandum and related records in response to their FOIA request and to publish the Helland Memo to its electronic ICE FOIA Library, consistent with its statutory obligations under FOIA. *See* ECF No. 1, ¶¶ 38–54 (Counts One, Two, Three, and Four); *id.* at 15–16 (Prayer for Relief); *cf.* ECF No. 20 at 6-7.

In April of 2026, nearly a year after Defendant issued the Helland Memo and over three months after Plaintiffs initiated this lawsuit, Defendant purportedly "published" the Helland Memo in its electronic FOIA Library. Upon inspection, however, Defendant has almost completely redacted the memo, rendering it all but useless – and still inaccessible – to the public. *See* ICE FOIA Library, "Memo: Increase of In-Person Check-Ins at Contractor Offices for ATD Participants – June 9, 2025 | Policies, Procedures and Manuals" (Apr. 29, 2026).[1] Defendant also produced the same, highly redacted version of the Helland Memo, along with four pages of additional records responsive to Plaintiffs' original FOIA request, on July 9, 2026. *See* ECF No. 20-2.

This gamesmanship from Defendant – "publishing" the Helland Memo while defying the entire purpose of FOIA, which is to inform the public – came as a surprise

---

1 https://www.ice.gov/doclib/foia/policy/memoIncreaseInPersonCheckInsContractorOfficesATD_Participants_06092025.pdf (last visited on Sept. 3, 2026).

to Plaintiffs, not least because Defendant had previously disclosed the Helland Memo in a less-redacted form in separate litigation. Because Defendant has unlawfully redacted significant portions of the Helland Memo, it continues to violate its obligations under FOIA. This Court should therefore deny Defendant's motion for summary judgment and should grant Plaintiffs' motion for summary judgment. Specifically, this Court should order Defendant to publish the Helland Memo and produce the same to Plaintiffs without any unlawful redactions applied.

## ARGUMENT

### I. Defendant Has Unlawfully Redacted Information from the Helland Memo and Has Also Violated Its Proactive Disclosure Obligations Under FOIA.

In every FOIA case, the agency bears the burden to justify nondisclosure. 5 U.S.C. § 552(a)(4)(B). *See, e.g.*, U.S. *Dep't of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989). On summary judgment, the agency "bears the burden of showing that there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requester." *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). The agency must sustain its burden by submitting detailed affidavits or declarations that identify the records at issue and show why they fall under the claimed exemptions. *See Summers v. Dep't of Just.*, 140 F.3d 1077, 1080 (D.C. Cir. 1998); *Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973).

"When an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption, summary judgment in favor of the FOIA plaintiff is appropriate." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d

1429, 1433 (D.C. Cir. 1992). Courts review agency FOIA decisions *de novo* and may examine the contents of disputed records in camera to determine whether the agencies should disclose them. 5 U.S.C. § 552(a)(4)(B).

FOIA arose out of concerns over the "mushrooming growth of Government secrecy." H.R. Rep. No. 89-1497, 2 (1966). The Supreme Court has recognized that FOIA represents the general philosophy of full agency disclosure unless the information is exempt under delineated statutory language. *See U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 494 (1994) ("[D]isclosure, not secrecy, is the dominant objective of FOIA.") (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). The statute serves as a means for citizens to know "what their government is up to." *Reps. Comm.*, 489 U.S. at 773. "This phrase should not be dismissed as a convenient formalism. It defines a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171–72 (2004).

Here, Defendant's actions violate the letter and the spirit of FOIA in three ways. First, Defendant has unlawfully applied exemptions to the Helland Memo in this case that it did not apply when it previously voluntarily disclosed the same records in separate litigation. Second, because Defendant unlawfully redacted most of the Helland Memo when it published the same to its electronic FOIA Library, Defendant is still violating the requirement under FOIA that agencies publish any "statement of policy, interpretation, or staff manual or instruction that affects a member of the public[.]" 5 U.S.C. § 552(a)(2). Third and finally, Defendant has unlawfully redacted the name of the high-level ICE official, Dawnisha Helland, who

issued the Helland Memorandum. The Court's intervention is needed to address each of these violations.

A. Defendant cannot rely on Exemption 7(E) to withhold information that it has previously voluntarily disclosed in a permanent public record.

In FOIA cases, "the government cannot rely on an otherwise valid exemption claim to justify withholding information that has been 'officially acknowledged' or is in the 'public domain.'" *Davis v. U.S. Dep't of Just.*, 968 F.2d 1276, 1279 (D.C. Cir. 1992); *see also Starkey v. Dep't of the Interior*, 238 F. Supp. 2d 1188, 1193 (S.D. Cal. 2002) (ordering agency to disclose two records identical to documents in the public domain and available through local government office). This rule is commonsensical, given that an "exemption can serve no purpose once information . . . becomes public." *Cottone v. Reno*, 193 F.3d 550, 555 (D.C. Cir. 1999). Thus, "'materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record.'" *North v. U.S. Dep't of Just.*, 810 F. Supp. 2d 205, 207 (D.D.C. 2011) (quoting *Cottone*, 193 F.3d at 554)).

The D.C. Circuit has held that plaintiffs must establish three elements to prove that an official public disclosure has occurred: the information requested (1) is "as specific as the information previously released," (2) "match[es] the information previously disclosed," and (3) has "already . . . been made public through an official and documented disclosure." *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C. Cir. 1990) (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983)).

To have been "officially" disclosed, the information must have been voluntarily disclosed by a government official who was permitted to make the disclosure. *Nowak*

*v. U.S. I.R.S.*, 210 F.3d 384, 2000 WL 60067 at *2 (9th Cir. 2000) (unpublished) ("In order to establish a waiver, the previous disclosure must have been authorized and voluntary."); *cf. Simmons v. U.S. Dep't of Just.*, 796 F.2d 709, 712 (4th Cir. 1986) (finding that unauthorized disclosure does not constitute waiver where agency affidavits confirm that disclosure was not done "in an official capacity"). Moreover, to be an official disclosure, the release must have been made by "the agency from which the information is being sought." *Frugone v. C.I.A.*, 169 F.3d 772, 774 (D.C. Cir. 1999).

As established in the accompanying declaration from Attorney Sarah Decker, Defendant voluntarily disclosed the Helland Memo in response to a habeas petition filed in the Eastern District of Pennsylvania in 2025. That litigation, in part, challenged ICE's unjustified application of an ankle monitor to the petitioner in that case. Exhibit 1, Decker Declaration; *see also* Exhibit 2, Copy of Helland Memo (as previously disclosed); Exhibit 3, Docket Sheet Print-Out from PACER. There was no protective order nor any other cloaking of the memo from public view in that case. *Cf.* Exhibits 1, 2, and 3. Anyone who wishes to obtain the exact same copy of the Helland Memo that Defendant filed in that case needs only visit the federal courthouse in Philadelphia and request a copy.[2]

[2] Fed. Rule Civ. Proc. 5.2(c) limits remote electronic access to documents in immigration-related cases, including habeas corpus petitions. While these documents are accessible via public terminals at federal courthouses, this restriction severely curtails timely access for journalists, academics, attorneys, and other members of the public. Therefore, while the Helland Memo has been preserved in a permanent public record, Defendant have not yet made it "available for public inspection in an electronic format" that is readily accessible to the public. 5 U.S.C. § 552(a)(2). As Plaintiffs argue *infra* at Section I.B, Defendant has an obligation to publish the

Thus, the analysis could not be more straightforward here. The information Plaintiffs requested – namely, a copy of the Helland Memo – is "as specific as the information previously released" by Defendant in separate litigation, because it is the same memo. *See Fitzgibbon*, 911 F.2d at 765. It therefore follows that the information requested "match[es] the information previously disclosed"—because it is the same memo. *Id.* Finally, although Defendant refused to publish an unredacted (or even a more-reasonably-redacted) version of the Helland Memo on the ICE FOIA Library website in response to Plaintiffs' FOIA request and subsequent Complaint, the fact remains that the Helland Memo "has already been made public through an official and documented disclosure." *Id.*

Moreover, Defendant here is the same agency that voluntarily disclosed the Helland Memo in that separate litigation. Defendant therefore cannot claim that this prior disclosure was somehow inadvertent, unauthorized, or made by someone not acting in an official capacity on their behalf or from within their agency. *Cf. Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 294 (4th Cir. 2004) (finding no waiver where attorney consulting for federal agency unilaterally released documents that he authored during course of attorney-client relationship between him and agency).

In sum, Defendant cannot withhold portions of the Helland Memo under Exemption 7(E) because, however reasonable its invocation of that exemption may be (and Plaintiffs do not concede that it is at all reasonable or lawful), it has already

---

Helland Memo under 5 U.S.C. § 552(a)(2), and they have not yet done so, in violation of FOIA.

*voluntarily and officially* disclosed the exact same information in a permanent public record as part of separate litigation. Despite this prior disclosure, Defendant has unlawfully withheld portions of the Helland Memo in both the version that it published on the ICE FOIA Library and in the version it produced to Plaintiffs. Because there is no genuine dispute of any material fact as to this prior disclosure, this Court should grant summary judgment in Plaintiffs' favor and order Defendant to remove all redactions under Exemption 7(E) from the version of the Helland Memo it published in the ICE FOIA Library and from the version it produced to Plaintiffs.

B. Defendant has failed to meet its statutory obligation to affirmatively publish materials under 5 U.S.C. § 552(a)(2).

Because Defendant has unlawfully applied Exemption 7(E) to the version of the Helland Memo it published in its FOIA Library, it has also failed to meet its statutory obligations under 5 U.S.C. § 552(a)(2). Typically called the "proactive disclosure" provisions of the FOIA statute, § 552(a)(2)(E) requires an agency to publish to the public in an electronic format any "final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public[.]" 5 U.S.C. § 552(a)(2)(E); *see also* §§ 552(a)(2)(A)-(C). The Department of Homeland Security's ("DHS") own FOIA guidance recognizes this obligation. In its most recent Chief FOIA Officer Report from 2024, DHS stated:

> The Attorney General's 2022 FOIA Guidelines emphasize that 'proactive disclosure of information is fundamental to the faithful application of the FOIA.' The Guidelines direct agencies to post 'records online quickly and systematically in advance of any public request' and reiterate that agencies should post records 'in the most useful, searchable, and open formats possible.'

*See* DHS 2024 Chief Freedom of Information Act Officer Report, 22 (March 2024).[3] Thus, as the clear statutory language in FOIA mandates and as Defendant's parent agency has recognized, Defendant's transparency obligations are not only triggered by FOIA requesters—they are part of the agency's affirmative responsibilities to the public.

Sadly, ICE's policy and practice of failing to adhere to its statutory obligations to proactively disclose records such as the Helland Memo are nothing new, nor are the lawsuits compelling the agency to meet that obligation. *See, e.g., Al Otro Lado, Inc. v. Immigr. & Customs Enf't*, 1:23-cv-01525, ECF No. 25 (D.D.C. Jan. 23, 2024) ("[T]he Court is mindful of the fact that this suit arises out of Defendant's purported lack [of] compliance with a pre-existing, mandatory obligation to publish records falling under FOIA's reading room provisions. Had Defendant posted some of the policies, manuals, and FOIA logs that it admits it did not publish to its 'FOIA Library' prior to this lawsuit, its present burden may have been somewhat alleviated by now[.]") (citations omitted); *National Bail Fund Network v. Immigr. & Customs Enf't*, No. 4:22-cv-07772, ECF No. 64 (N.D. Cal. Jan. 11, 2024) (court-approved settlement where ICE stipulated to proactively publish its immigration bond policies and procedures); *Innovation Law Lab v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-00066, ECF No. 46 (D. Or. Apr. 26, 2026) ("FOIA requires agencies to affirmatively disclose statements of policy, interpretations, and agency instructions that affect the public, and agencies are prohibited from relying on undisclosed rules against litigants who

---

[3] https://www.dhs.gov/sites/default/files/2024-07/24_0729_PRIV_2024-Chief-FOIA-Officer-Report.pdf (last visited on Sept. 3, 2026).

lack actual notice of the terms of those rules."). Here, Defendant has not only failed to live up to its proactive disclosure obligations under § 552(a)(2) by failing to publish the Helland Memo on its own initiative, but it has continued to violate that duty through publishing a version of the Helland Memo that is so completely, improperly redacted that it fails to provide the public with "actual notice of the terms of [ICE's ATD] rules." *Innovation Law Lab v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-00066, ECF No. 46 (D. Or. Apr. 26, 2026).

Defendant may respond that, because it has previously disclosed a less-redacted version of Helland Memo in a permanent public record in separate litigation, it should now be relieved of its obligation to publish that less-redacted version in its electronic FOIA Library. This would merely be more gamesmanship on the part of Defendant, and the Court should not reward such a deliberate subversion of the FOIA. While a member of the public may theoretically obtain the less-redacted Helland Memo by requesting a copy from the federal court in Philadelphia, that presupposes that (1) the person is somehow aware of this record's existence and (2) has the means and wherewithal to travel to the Eastern District Court of Pennsylvania to request a copy of this record.

These conditions are highly unlikely to be met. As noted above, Defendant previously disclosed the Helland Memo in response to an immigration habeas petition. Fed. Rule Civ. Proc. 5.2(c) limits remote electronic access to documents in immigration-related cases, including habeas corpus petitions. This means that, practically speaking, only the parties to that habeas petition can access the filings

from that case on PACER. Attorney Sarah Decker and others have shared the version of the Helland Memo they obtained via that litigation with others, but it is, of course, not their job to make the public aware of Defendant's ATD policies. That obligation falls to Defendant, and Defendant alone, under the FOIA. As it stands, journalists, academics, attorneys, and other members of the public are generally not aware that Defendant previously disclosed a less-redacted version of the Helland Memo. Even if they were aware, the protective rules around immigration habeas petitions would make accessing this version of the Helland Memo impractical at best.

As a final indicator of just how far Defendant is from complying with its § 552(a)(2) obligations, even accepting its explanation wholesale (which Plaintiffs do not), it has still failed to comply with the statute as to the Helland Memo. 5 U.S.C. § 552(a)(2)(E) requires that, if an agency publishes a statement of policy but redacts/deletes portions of the policy, "the justification for the deletion *shall be explained fully in writing*, and the extent of such deletion shall be indicated on the portion of the record which is made available or published . . . ."[4] Defendant's illusory publication of the Helland Memo could thus not be further from complying with FOIA.

[4] The DOJ FOIA manual recognizes and states this plainly—"Agencies should therefore review documents they intend to proactively disclose just as they review documents for disclosure in response to FOIA requests, taking into account the Attorney General's strong encouragement to make discretionary disclosures. When proactive disclosures are made in partly-redacted form, all redactions must be marked and the basis for the redaction noted on the document that is posted online." (citing 5 U.S.C. § 552(a)(2)).

In sum, while the Helland Memo has been preserved in a permanent public record, Defendant has not yet made it "available for public inspection in an electronic format" that is readily accessible to the public. This violates its obligations under 5 U.S.C. § 552(a)(2). The Court should accordingly order Defendant to publish a version of the Helland Memo in its electronic FOIA Library that is no more redacted than the version it previously voluntarily disclosed in separate litigation.

C. Defendant failed to meet the threshold for withholding records under Exemption 6.

Defendant is not entitled to summary judgment on its Exemption 6 withholdings. Exemption 6 allows the agency to redact certain "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 "does not categorically exempt individuals' identities." *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 153 (D.C. Cir. 2006). "The scope of a privacy interest under Exemption 6 will always be dependent on the context in which it has been asserted." *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 581 (D.C. Cir. 1996).

Even if the privacy interest is a substantial one, the Court must balance the individual's right of privacy against the public interest in disclosure. *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005) (citing *Rose*, 425 U.S. at 372–73). "The focus of the public interest analysis is the citizens' right to know 'what their government is up to.'" *Id.* (quoting *Reps. Comm.*, 489 U.S. at 773). Neither the identity of the requesting party nor the purpose for which the party intends to use a document is relevant to the public interest, but the availability of the information

through other sources is. *Id.* The agency bears the burden of showing that a *substantial* invasion of privacy will occur if the documents are released, which requires a reasonable degree of specificity of detail rather than merely conclusory statements. *See Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015). To carry its burden, the agency must "adequately describe each [redaction] from a released document, and must state the exemption claimed for each . . . [redaction] and explain why the exemption is relevant." *Id.* at 1148 (internal quotation marks and citations omitted) (emphasis added).

ICE's categorical, document-based *Vaughn* index fails here, as the *Vaughn* index did in *Prison Legal News*, because it treats the privacy interests of government personnel the same regardless of each individual's status, position, or information, incorrectly concluding that the balancing interest in disclosure will be equivalent, regardless of facts. *See Prison Legal News*, 787 F.3d at 1150–51 (contrasting the facts of different instances of Defendant's record-set and explaining why the categorical, document-based Exemption 6 analysis fails as a result).

Courts have also rejected Exemption 6 where it involves a high-ranking agency official. *See e.g.*, *Agirre v. Securities and Exch Comm'n*, 551 F.Supp.2d 33, 53 (D.D.C. 2008) (information that "merely identifies the names of government officials who authored documents and received documents" does not generally fall within Exemption 6.); *New York Times Co. v. National Aeronautics and Space Admin.*, 920 F.2d 1002, 1009 (D.C. Cir. 1990) ("[i]t is the rare file indeed for which the Government could, in good faith, assert an interest in authorial privacy, simply because it is most

unusual for a government file to yield up any meaningful information about its author."); *National Day Laborer Organizing Network v. United States Immigration & Customs Enforcement Agency,* 811 F. Supp. 2d 713, 747 (S.D.N.Y. 2011) ("it is [] inappropriate for the agencies to withhold this information—over which they have sole access'—in an attempt to gain their own advantage.").

The impropriety of Exemption 6 for personnel names is most acute with the redaction of ICE Acting Assistant Director Dawnisha Helland's name from the June 9th memo. Her name, or the name of whomever the agency knows or asserts is the author of the memo, must be disclosed, as there is no good faith argument from Defendant that such a high-level, public official has a legitimate interest in authorial privacy. *See New York Times*, 920 F.2d at 1009. Even assuming there is some *de minis* privacy at issue in the June 9th memo's author, the court in *New York Times* went on to state "[e]ven more rarely . . . will the author's interest outweigh the public interest in disclosure of the government file that he or she authored." *Id.* Moreover, Assistant Director Helland's name has already been tied to the memorandum,[5] and more importantly, the agency eventually produced records directly responsive to Plaintiff's request, *inter alia*, for the memo "authored or signed by Dawnisha M. Helland." *See* ECF 20-1, ¶ 16. Because the agency has failed to meet its Exemption 6 withholdings, Plaintiffs are entitled to summary judgment as a matter of law.

[5] *See* Marianne LeVine, et al., *ICE moves to shackle some 180,000 immigrants with GPS ankle monitors*, The Washington Post (Jul. 24, 2025), https://www.washingtonpost.com/immigration/2025/07/24/ice-check-in-ankle-monitor-immigrants/.

## CONCLUSION

Defendant has unlawfully applied exemptions to the Helland Memo in this case. It redacted information under Exemption 7(E) that it did not apply when it previously voluntarily disclosed the same records in separate litigation; the decision to invoke that same exemption in the version of the Helland Memo that Defendant published to its electronic FOIA Library also violates its obligations under 5 U.S.C. § 552(a)(2). Finally, Defendant has unlawfully applied Exemption 6 redactions to a high-level official. Because there is no genuine dispute of material fact on these issues, this Court should deny Defendant's motion for summary judgment and grant Plaintiff's cross-motion for summary judgment.

Dated: September 3, 2026 Respectfully submitted,

By: /s/ Daniel Melo

Daniel Melo
The Melo Law Firm
NC Bar # 48654
2920 Forestville Road, Ste 100
PMB 1192
Raleigh, NC 27616
Tel: (919) 348-9213
dan@themelolawfirm.com
*Pro Bono Counsel for Plaintiffs*

*/s/ F. Evan Benz*
F. Evan Benz, Esq.
NC Bar No. 49077/GA Bar No. 820944
AMICA CENTER FOR IMMIGRANT RIGHTS
1025 Connecticut Ave NW Ste. 701
Washington, DC 20036
Phone: (202) 869-3984
evan@amicacenter.org
*Pro Bono Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2026, the foregoing document was filed with the Clerk of the Court via CM/ECF, which will send notice of such filing to all counsel of record who are registered CM/ECF users in this case.

By: /s/ Daniel Melo