IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:26-CV-28-MOC-MTO

CAROLINA MIGRANT NETWORK, AMICA CENTER FOR IMMIGRANT RIGHTS,

Plaintiffs,

v.

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,

Defendant.

**UNITED STATES' REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

The United States submits this reply memorandum in support of its motion for summary judgment under Federal Rule of Civil Procedure 56 and this response in opposition to Plaintiffs' cross-motion for summary judgment. For the reasons described in its opening brief in support of its motion for summary and for the reasons described below, the undisputed evidence establishes that the United States Immigration Customs Enforcement has properly applied lawful exemptions under the Freedom of Information Act, 5 U.S.C. § 552, to the information Plaintiffs seek to have disclosed, and there exists no genuine issue of material fact. The United States, therefore, is entitled to judgment as a matter of law on Plaintiffs' FOIA claims, and this Court should grant the United States' motion for summary

judgment, deny Plaintiffs' cross-motion for summary judgment, and enter judgment in favor of the United States and against Plaintiffs Carolina Migrant Network and Amica Center for Immigrant Rights.

## INTRODUCTION

As the evidence establishes, ICE has produced all of the non-exempt records responsive to Plaintiffs' FOIA request and has explained its reasons for the redactions in the produced records. In redacting certain information within the records, Dr. Kenneth Clark's credible affidavit and the agency's *Vaughn* index establish that the agency relied upon FOIA exemptions that authorized or required those redactions. Plaintiffs' response to the United States' motion for summary judgment is notable for what they do not challenge: (1) Plaintiffs do not offer any argument against application of Exemption 7(E) to the substantive redactions in the disclosed records, except on the basis of waiver;[1] (2) Plaintiffs do not present any challenge to the redaction of personnel information, including the identity of the author of the June 9, 2025, email, under Exemptions 7(C) and 7(F); (3) Plaintiffs do not challenge the exponential increase in threats and attacks against ICE personnel, particularly those in the Enforcement and Removal Operations; and (4)

[1] Plaintiffs assert that they "do not concede" that ICE's application of Exemption 7(E) was "reasonable or lawful." ECF 21-1 at 7. But they also do not offer any legal authority or argument challenging the legality or reasonableness of those redactions. Plaintiffs have, therefore, waived any legal challenge to the 7(E) redactions outside of waiver. *See Cox v. SNAP, Inc.*, 859 F.3d 304, 308 n.2 (4th Cir. 2017).

Plaintiffs do not challenge the disclosures of the March 7, 2025, or October 10, 2025, emails or any of the redactions to those emails under FOIA exemptions.

As explained below, the disclosure of public records in the context of litigation, particularly where the federal rules prevent any but in-person access to those records, does not constitute a waiver of the United States' authority to apply FOIA exemptions more broadly in response to routine FOIA requests. This authority defeats Plaintiffs' challenge to ICE FOIA's application of Exemption 7(E). And because Exemptions 7(C) and 7(F) independently support the personnel-information redactions, Plaintiffs' challenge to those redactions under Exemption 7(C) fails. Even if Exemptions 7(C) and 7(F) did not independently support the redaction of personnel personal identifiable information, including the name of the author of the June 9 email, ICE FOIA reasonably applied Exemption 7(C) under the dangers currently faced by ICE personnel.

## ARGUMENT

### This Court should grant the United States' motion for summary judgment because there is genuine issue of material fact and the United States is entitled to judgment as a matter of law.

#### A. Rule 56 standard

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### B. ICE is entitled to summary judgment as long as its disclosures and application of FOIA exemptions were reasonable, taking into account the lack of certainty in attempting to predict harm.

In describing an agency's duties under the Freedom of Information Act, Plaintiffs describe the general obligation, consistent with "a general philosophy of full agency disclosure," to make records available upon request. *Empower Oversight Whistleblowers & Res. v. Nat'l Inst. of Health*, 122 F.4th 92, 100 (4th Cir. 2024) (quoting *Coleman v. DEA*, 714 F.3d 816, 818 (4th Cir. 2013)); *see* ECF 21-1 at 3–4. Plaintiffs do not, however, describe the standard this Court is to apply when evaluating an agency's compliance with FOIA and its application of FOIA exemptions. That standard requires this Court to measure the adequacy of the United States' showing in support of its application of a FOIA exemption "by a standard of reasonableness, which takes into account the lack of certainty in attempting to predict harm while providing an objective test." *Zaid v. Dep't of Justice*, 96 F.4th 697, 704 (4th Cir. 2024). The United States satisfies its burden when it describes "the withheld material with reasonable specificity" and explains "how it falls under one of the enumerated exemptions." *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 290 (4th Cir. 2004); *see also Driggs v. Central Intel. Agency*, 184 F.4th 692, 697 (4th Cir. 2026). The agency does not need to establish that an exemption applies "to each record withheld." *Zaid*, 96 F.4th at 704. Instead, "the exemption may be invoked on a categorical or 'generic' basis by grouping records into categories and explaining how each category would generally interfere with

enforcement proceedings." *Id.* (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 223–24 (1978)).

### C. ICE properly applied Exemption 7(E), and its more limited redactions in the context of litigation and the rules that apply to litigation is not a waiver of its right to apply Exemption 7(E) more fully in response to a routine FOIA request.

#### 1. *ICE properly applied FOIA Exemption 7(E) to protect law-enforcement techniques and procedures in the June 9, 2025, email.*

Exemption 7(E) of FOIA applies to "records or information compiled for law enforcement purposes" that would disclose techniques, procedures, or guidance for law-enforcement investigations or prosecutions, "if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7). The Fourth Circuit has recognized that "'even for well-known techniques or procedures, Exemption 7(E) protects information that would reveal facts about such techniques or their usefulness that are not generally known to the public,' including details of their use or execution, 'as well as other information when disclosure could reduce the effectiveness of such techniques.'" *Grey v. Alfonso-Royals*, 140 F.4th 173, 179 (4th Cir. 2025) (quoting *Broward Bulldog, Inc. v. U.S. Dep't of Just.*, 939 F.3d 1164, 1191 (11th Cir. 2019)).

ICE properly applied Exemption 7(E) and excluded portions of each of the three emails it produced, related to techniques, procedures, and guidelines applicable to the Alternatives to Detention program. *See* Ex. A at 3, 5, 7. Each of the emails describe facets of the Alternatives to Detention Intensive Supervision Appearance Program criteria, including procedures for the evaluation, eligibility,

and enrollment into the program (March 7 email); information about security measures and protocols (March 7 email); procedures and policies governing the referral of aliens to the program (March 7 email), policies governing the A-Teams (June 9 email), and techniques for monitoring the release of aliens and identifying program violators (October 10 email). Ex. A at 3, 5, 7. ICE explains in its *Vaughn* index that the disclosure of this information "would allow the circumvention" of the program and the law" by revealing techniques and procedures that could allow program participants to obtain release, circumvent monitoring, evade security measures, disrupt immigration-enforcement operations. Ex. A at 3, 5, 7.

ICE has credibly explained why the disclosure of all of the redacted information "would generally interfere with enforcement" of its immigration laws. *Zaid*, 96 F.4th at 704. As the Fourth Circuit explained last month in *Driggs*, "the law only requires that [ICE] fairly describe the content of the material withheld and adequately state its grounds for nondisclosure." *Driggs*, 184 F.4th at 698 (cleaned up). "Requiring more would risk disclosure of the very information [ICE] seeks to protect." *Id.* Because ICE has satisfied FOIA's standard of reasonableness as described in *Zaid* and *Driggs*, it has properly applied Exemption 7(E) as a matter of law.

2. *Plaintiffs have not satisfied their burden to show that ICE waived its right to apply Exemption 7(E) to the June 9 email.*

This Court should reject Plaintiffs' suggestion that ICE waived its right to apply Exemption 7(E) to redact a significant amount of the June 9, 2025, email, based on its disclosure of a less-redacted version of the email in the context of

district court habeas corpus litigation in the Eastern District of Pennsylvania. *See* ECF 21-2. "Without question, the Act is broadly conceived." *Environmental Prot. Agency v. Mink*, 410 U.S. 73, 80 (1973). "The statute provides a mechanism to obtain 'official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands.'" *Louise Trauma Ctr. LLC v. United States Citizenship & Immigr. Servs.*, 147 F.4th 495, 501 (4th Cir. 2025) (quoting *Mink*, 410 U.S. at 80). The exemptions described in subsection (b) are "part of this scheme and represents the congressional determination of the types of information that the Executive Branch must have the option to keep confidential, if it so chooses." *Mink*, 410 U.S. at 80. And as the Senate Committee explained and the Supreme Court recognized in *Mink*, this balancing of interests was not "'an easy task.'" *Id.* (quoting S. Rep. No. 89-813, at 3 (1965)). FOIA's objective is to provide "a workable formula which encompasses, balances, and protects all interests, yet places emphasis on the fullest responsible disclosure." S. Rep. No. 89-813, at 3.

As long as an exemption may still serve its purpose, however, an agency's disclosure of a record does not waive its ability later to rely on that exemption. *Prison Legal News v. Executive Off. for U.S. Att'ys*, 628 F.3d 1243, 1252 (10th Cir. 2011). The D.C. Circuit, applying what has become known as the public domain doctrine, has explained that "the logic of FOIA mandates that where information requested is *truly public*, then enforcement of an exemption cannot fulfill its purposes." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (emphasis added).

Where, however, the disclosure of exempted information is sufficiently limited that the information may not be "easily disseminated further," the agency may still rely upon a FOIA exemption to support redactions in later disclosures. *Prison Legal News*, 628 F.3d at 1253. Stated another way, the waiver Plaintiffs argue "is limited and applies only when the applicable exemption can no longer serve its purpose." *Id.* "Given that the public domain doctrine appears nowhere in the statutory text of FOIA, only the failure of the express exemption to provide *any protection of the interests involved* could justify its application." *Id.* (emphasis added). Importantly, it is the plaintiff's burden to show that information that an agency seeks to protect has been publicly disseminated. *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992).

Applying this rule, Plaintiffs have not satisfied their burden to show that ICE waived its right to apply greater substantive redactions to the June 9 email before disclosing it to Plaintiffs in response to their FOIA request because a less-redacted version was filed in a district court case in the Eastern District of Pennsylvania. First, ICE's less limited disclosure of the June 9, 2025, email in the context of district-court litigation does not constitute a *voluntary agency decision* to make the less-redacted version of the email readily available. The habeas litigation that prompted ICE to disclose a greater portion of the June 9 email challenged, according to the declaration submitted by Plaintiffs, the imposition of an ankle monitor on an individual after he was released on bond from ICE detention. ECF 21-2 ¶ 2. Moving to dismiss that plaintiff's lawsuit only a month after it was filed,

ICE attached a less-redacted June 9 email describing details of the "increase of in-person check-ins" for participants in the Alternatives to Detention program. *See* ECF 21-3. ICE disclosed this information to defend itself against a complaint for legal relief. And G-T- voluntarily dismissed his complaint six days after the United States filed its motion to dismiss, after the United States removed G-T-'s ankle monitor. *See* ECF 21-3 ¶ 5. Although ICE was compelled to disclose enough information to support its motion to dismiss, there is no evidence that this disclosure was the result of an official agency decision to make "truly public" the information included in the less-redacted June 9 email the agency disclosed in the context of the *G-T-* litigation. *See Cottone v. Reno*, 193 F.3d at 554; *G-T- v. McShane*, No. 2:25CV05788-KSM, ECF 16 (EDPA Nov. 7, 2025).

That Plaintiffs have failed to show an official agency decision in favor of broad disclosure based on the filing of a less-redacted version of the June 9 email in support of a motion to dismiss a district-court habeas action is supported by the limited availability of that district-court pleading under Federal Rule of Civil Procedure 5.2(c). Rule 5.2(c) restricts the public's access to pleadings filed in actions "relat[ed] to" immigration "detention." Fed. R. Civ. P. 52(c). Under Rule 5.2(c), only parties to the litigation and their attorneys may have remote electronic access to those pleadings. *Id.* All other individuals or interested groups, such as Plaintiffs, may only access those pleadings electronically "at the courthouse" in the district of litigation. *Id.* These limitations exist because, as the Advisory Committee Notes explain, immigration actions "are entitled to special treatment due to the

prevalence of sensitive information and the volume of filings." Fed. R. Civ. P. 52 advisory committee's notes to 2007 adoption. Because of these restrictions, ICE's attachment of the less-redacted email as an exhibit to its motion to dismiss cannot be construed as an official agency decision in favor of broad public access. ICE could reasonably conclude that its decision to make such a limited disclosure of the less-redacted June 9 email was compelled by the need to defend against G-T-'s complaint and would not be construed as a waiver of its right to apply Exemption 7(E) in the context of a broader request for the information.

Second, because of the same Rule 5.2(c) accessibility rules that limit access to the less-redacted email that ICE disclosed in the *G-T-* litigation, Plaintiffs have not satisfied their burden to show that the less-redacted email is readily available to the public. Although it is true that any member of the public can technically access the less-redacted June 9 email because it is part of a publicly filed legal proceeding, it is not *readily accessible*. In order to access that document, a member of the public must (1) learn enough case information to know in what legal matter the less-redacted email was filed, (2) travel to the Eastern District of Pennsylvania, (3) find her way to the public-access computer in the clerk's office at the federal courthouse, and (4) review the less-redacted email at that clerk's office workstation. Because of the rules-based impediments to public access to the less-redacted June 9 email, ICE's disclosure of the less-redacted email in the context of the *G-T-* litigation did not make that email "readily available" to the public.

Perhaps the best evidence that Plaintiffs cannot satisfy their burden of showing that the evidence is readily available to the public is the existence of this action. As the Supreme Court observed in *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, if the information sought to be disclosed were already "'freely available,' there would be no reason to invoke FOIA to obtain access to the information they contain." 489 U.S. 749 (1989). Even Plaintiffs concede that "[w]hile a member of the public may theoretically obtain the less-redacted" June 9 email, it is "highly unlikely" that a member of the public will "somehow be aware of this record's existence" and "has the means and wherewithal to travel to the Eastern District Court of Pennsylvania to request a copy of this record." ECF 21-1 at 10. This is exactly why ICE has not waived its right to apply FOIA exemptions to the information disclosed in the less-redacted June 9 email in the *G-T-* litigation: Because it is "highly unlikely" that a member of the public will be able to obtain the less-redacted June 9 email, the less-redacted June 9 email is not, in fact, readily available to the public. Additionally, because access to the less-redacted email is so limited as a practical matter, ICE FOIA's application of Exemption 7(E) to protect against broad access to immigration-related law-enforcement standards and techniques continues to serve the purpose of that FOIA exemption.

The undisputed facts in this record establish that ICE properly applied Exemption 7(E) to support greater substantive redactions when responding to Plaintiffs' FOIA request because it had not made a voluntary disclosure of additional parts of the email that made those portions readily available. The

greater redactions effectively continue to serve the purpose of Exemption 7(E) to protect sensitive law-enforcement strategies and techniques related to the Alternatives to Detention program. This Court should, therefore, grant the United States' motion for summary judgment as to its application of Exemption 7(E) to support substantive redactions of the June 9 email in its FOIA disclosure to Plaintiffs.

3. *Plaintiffs' assertion that ICE FOIA violated 5 U.S.C. § 552(a)(2) also fails as a matter of law.*

Because ICE FOIA properly applied redactions to the June 9 email consistently with Exemption 7(E), Plaintiffs' claim that ICE FOIA violated 5 U.S.C. § 552(a)(2) when it applied that exemption also fails. Section 552(a)(2) requires federal agencies to "make available for public inspection" all "administrative staff manuals and instructions to staff that affect a member of the public." 5 U.S.C. § 552(a)(2)(C). That section allows for deletions from these materials "to prevent a clearly unwarranted invasion of personal privacy," as long as "the justification for the deletion" is "explained fully in writing." 5 U.S.C. § 552(a)(2).

Critically, however, subsection (b) of FOIA, which describes each of the exemptions ICE FOIA applied to its disclosures to Plaintiffs, provides that § 552(a)(2) — and indeed all of § 552(a) — "does not apply to" records and information that fall into one of the exemption categories described in § 552(b). Exemption 7(E), which applies to records or information that would "disclose techniques and procedures for law enforcement investigations or prosecutions," is among those exemptions, as is each of the other exemptions applied by ICE FOIA to

support its redactions of information in the disclosures made to Plaintiffs. *See* 5 U.S.C. § 552(b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F).

Plaintiffs' argument grounded in § 552(a)(2) fails because § 552(a)(2) has no application where an agency reasonably concludes that a FOIA exemption applies to permit the agency to redact information or to excuse disclosure altogether. And for the reasons described in the United States' opening brief, the evidence presented to this Court establishes as a matter of law that ICE has satisfied FOIA's standard of reasonableness as described in *Zaid* and *Driggs* for each of its redactions.

**D. ICE properly redacted personal identifiable information under Exemption 6.**

Because of the extraordinary risk to individuals associated with ICE law-enforcement actions, ICE reasonably determined that the disclosure of names and contact information about any of the individuals associated with the records disclosed to Plaintiffs would risk the safety of those individuals. ICE properly redacted, therefore, its employees' personally identifiable information under Exemptions 6, 7(C), and 7(E).

As an initial matter, the United States notes that ICE justified each of its personal-information redactions under three FOIA exemptions: Exemption 6, Exemption 7(C), and Exemption 7(F). Plaintiffs challenge only the agency's application of Exemption 6. Plaintiffs have waived, therefore, any argument that ICE improperly redacted that information. Because Plaintiffs do not challenge two of the three bases for the personal-information redactions, this Court need not

address Plaintiffs' argument that ICE improperly redacted its employees' personal information under the third exemption that justifies those redactions.

If this Court chooses to review ICE's application of Exemption 6 on the merits, it should grant the United States' motion for summary judgment as to the Exemption 6 redactions. Exemption 6 provides that the FOIA duty to disclose does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. *Id.* § 552(b)(6). The Supreme Court has explained that Exemption 6 is intended to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982). So long as "the records at issue are likely to contain the type of personal information that would be in a medical or personnel file," the agency has properly determined that the information is contained in a file that is "similar" to a medical or personnel file. *Wood v. FBI*, 432 F.3d 78, 86 (2d Cir. 2005). The Fourth Circuit has explained that it applies "a broad meaning to the word 'file,' considering the term similar files" to include "all files which contain information about a particular individual." *Empower Oversight Whistleblowers & Research v. National Inst. of Health*, 122 F.4th 92, 107 (4th Cir. 2024).

If the "similar files" requirement is satisfied, a court "employ[s] a balancing test that weighs the individual's privacy interests against the public interest in disclosure." *Solers, Inc. v. IRS*, 827 F.3d 323, 332 (4th Cir. 2016). Although "[n]ames and other identifying information do not always present a significant

threat to an individual's privacy interest," whether the disclosure of agency employees' names "threatens a significant privacy interest depends on the consequences likely to ensue from disclosure." *Wood*, 432 F.3d at 88. If the employees may be "subject to harassment or embarrassment if their identities are disclosed," that interest "against possible harassment and embarrassment . . . raises a measurable privacy concern that must be weighed against the public's interest in disclosure." *Id.* As the Fourth Circuit explained in *Empower Oversight*, Exemption 6 may properly be applied "to agency employees' identities and email addresses." *Empower Oversight*, 122 F.4th at 107.

Applying this standard, ICE properly redacted from the records disclosed to Plaintiffs the email addresses and personally identifiable information of ICE personnel. Ex. 1 ¶ 44; Ex. A at 2, 4, 6. Plaintiffs do not challenge ICE's conclusion that the personal information redacted from ICE's disclosures to Plaintiff falls squarely within the exemption's application to "personnel" and "similar" files. And ICE reasonably determined that at the time of ICE's disclosures to Plaintiffs in April and July of 2026, the disclosure of ICE employees' personal information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). As Dr. Clark, Assistant Director of ICE's Office of Information Governance and Privacy, credibly explained, ICE employees have a strong privacy interest in their contact and personally identifiable information because there has been a 400% increase in threats of harm to ICE employees since February of 2025 and the disclosure of identifying and contact information could result in threats to

the employees' lives or safety. *See* Ex. 1 ¶¶ 45–46; Ex. A at 2, 4, 6. Even if the disclosure of the names of higher-level employees does not always trigger a privacy interest that FOIA might protect, the exponential increase in threats of harm against ICE employees is more than sufficient to support consideration of that privacy interest when determining whether to disclose those names.

ICE FOIA also reasonably determined that the disclosure of ICE employees' personally identifiable information "serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities." ECF 20-1, Ex. A at 18, 20, 22. The unredacted portions of each of the emails reveals that the emails were sent by high-level employees within the Enforcement and Removal Operations department of ICE. ECF 20-2 at 1, 3, 5. The October 10, 2025, email reflects that it was sent by the Acting Executive Associate Director of Enforcement and Removal Operations. ECF 20-2 at 1. The March 7, 2025, and the June 9, 2025, emails both reflect that they were sent by the Assistant Director of Non-Detained Management within the Enforcement and Removal Operations. ECF 20-2 at 3. Although the names of the individuals are redacted, ICE FOIA's disclosures informed the public of the subject matter of the email, the date of the email, the class of recipients of the email, and the position within the agency of the authors of the emails. These disclosures strike the right balance of protecting individual privacy interests against threats of harm and harassment while informing the public about the office and the administrator who is sending these emails and giving whatever directives may be contained within them. The

Exemption 6 redactions do not in any way interfere with the public's ability to "know what their government is up to."

This Court measures the application of FOIA exemptions "by a standard of reasonableness." *Zaid*, 96 F.4th at 704. Through Dr. Clark's affidavit and the agency's *Vaughn* index, ICE credibly and specifically explained why the disclosure of this information could harm its employees and why its disclosure would not serve FOIA's purpose. The United States has, therefore, established as a matter of law that it has reasonably and properly applied FOIA's Exemption 6.

This Court should reject Plaintiffs' reliance on *Prison Legal News v. Samuels*, 787 F.3d 1142 (D.C. Cir. 2015), to challenge ICE's application of a categorical rule against disclosure of the names and personally identifiable information of its employees. The D.C. Circuit in *Prison Legal News* endorsed the categorical application of redactions "when the FOIA litigation process threatens to reveal the very information the agency hopes to protect." 787 F.3d at 1149 (cleaned up). "The range of circumstances included in the category must," the court explained, "support an inference that the statutory requirements for exemption are satisfied." *Id.* at 1150 (cleaned up). Because the agency in *Prison Legal News* applied redactions based on the specific type of filed document, instead of the type of privacy interests the individuals possessed or the public interest in disclosure, the court held that application of the categorical approach under those circumstances was erroneous. *Id.* at 1150–52.

*Prison Legal News* offers Plaintiffs no assistance because ICE applied its Exemption 6 redactions based on categories of privacy interests that were identical. Dr. Clark explained that ICE applied Exemption 6 to protect individual employee's names and contact information because all ICE employees currently face a high risk of threats and harassment. The individuals' privacy interests aligned. And the public's interest in disclosure of the individuals involved in the directives related to the Alternatives to Detention program also aligned. *Prison Legal News*, therefore, supports ICE's application of Exemption 6 to redact individual employee's names and contact information.

## CONCLUSION

Because the facts alleged in Plaintiffs' complaint, along with the exhibits provided by both parties, establish that ICE has released all of the non-exempt records Plaintiffs requested, the United States is entitled to judgment as a matter of law as to each of Plaintiffs' FOIA claims. This Court should, therefore, grant the United States' motion for summary judgment and deny the Plaintiffs' motion for summary judgment.

Respectfully submitted, this 5th day of October, 2026.

RUSS FERGUSON
UNITED STATES ATTORNEY

s/Amy E. Ray
Assistant United States Attorney
N.C. Bar No. 22762
Room 233, US Courthouse
100 Otis Street
Asheville, NC 28801
Tel: 828-259-0662
Fax: 828-271-4327
E-Mail: Amy.Ray@usdoj.gov