**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| CAROLINA MIGRANT NETWORK, AMICA CENTER FOR IMMIGRANT RIGHTS,<br><br>Plaintiffs,<br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Defendant. | **CASE NO. 3:26-CV-28** |

**<u>PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiffs submit this reply in support of their motion for summary judgment. At this stage in the briefing, two central issues remain: (1) whether ICE can withhold information here that it has voluntarily disclosed in permanent public record elsewhere, and (2) whether ICE can avoid its affirmative obligation under 5 U.S.C. § 552(a)(2) to publish the withheld information in its electronic reading room. Considering the governing case law and the record here, the answer to both questions is, "No." Accordingly, this Court should grant summary judgment in Plaintiffs' favor and order Defendant U.S. Immigration and Customs Enforcement ("ICE") to publish in its electronic reading room the June 9, 2025, memorandum from ICE Acting Director Dawnisha Helland ("the Helland Memo") without any information withheld under Exemption 7(E).

//

//

## ARGUMENT

### I. ICE's prior disclosure of the Helland Memo bars it from now withholding that same information under Exemption 7(E).

As ICE acknowledges, "the government cannot rely on an otherwise valid exemption claim to justify withholding information that has been 'officially acknowledged' or is in the 'public domain.'" *Davis v. U.S. Dep't of Just.*, 968 F.2d 1276, 1279 (D.C. Cir. 1992); *accord American Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 620 (D.C. Cir. 2011) ("If the government has officially acknowledged information, a FOIA plaintiff may compel disclosure of that information even over an agency's otherwise valid exemption claim.") The D.C. Circuit has also stated categorically that an "exemption *can serve no purpose* once information . . . becomes public." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (emphasis added); *id.* at 554 ("Where information requested and withheld 'is truly public, then enforcement of an exemption *cannot fulfill its purposes*.'") (quoting *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy,* 169 F.3d 16, 19 (D.C. Cir. 1999)) (emphasis added). This Court has applied the public domain doctrine to compel an agency to produce withheld records that matched information previously disclosed in a permanent public record. *Davis v. U.S. Dep't of Def.*, No. 3:07-CV-492-RJC-DSC, 2010 WL 2640559, at *1 (W.D.N.C. June 29, 2010).

While acknowledging the D.C. Circuit's formulation and application of the public domain doctrine, ICE nevertheless attempts to flip the doctrine on its head by arguing that it can continue to withhold previously disclosed information so long as the exemption "may still serve its purpose." ECF No. 23 at 7–8 (citing *Prison Legal*

*News v. Executive Off. for U.S. Att'ys*, 628 F.3d 1243, 1252–53 (10th Cir. 2011)). ICE's proposed exception would swallow the rule and allow it to withhold information even after it has voluntarily disclosed it in a permanent public record. Moreover, the single circuit decision upon which ICE's argument relies is readily distinguishable and unpersuasive.

In a second maneuver to avoid the consequences of its prior waiver, ICE attempts to shift the goalposts regarding the public domain doctrine, arguing that the less-redacted version of the Helland Memo is not "readily accessible" to the public and, by implication, is not "truly public." However, ICE can point to no authority in support of this argument, which is unsurprising given that courts only consider whether the requested information exists in a permanent public record, and practical impediments to accessing the record are irrelevant.

Finally, ICE claims that it was "compelled" to disclose the less-redacted version of the Helland Memo to defend itself against litigation. But that strategic decision was official and voluntary, and resulted in that version of the Helland Memo being placed in a permanent public record. There is no exception to the public domain doctrine for disclosures made during litigation. Even if there were an exception for habeas litigation, in the last week, ICE voluntarily produced a less-redacted version of the Helland Memo in response to another of Plaintiffs' FOIA requests, further undermining the agency's attempts to withhold information here.

Each of these attempts to dodge the fact that ICE previously voluntarily disclosed a less-redacted version of the Helland Memo in a permanent public record

falls flat. Because of this prior disclosure, ICE cannot reasonably withhold the same information here.

### A. ICE's prior public disclosure of the Helland Memo means that Exemption 7(E) can no longer serve its purpose.

ICE relies on a single decision from the Tenth Circuit to argue for an exception to the public domain doctrine that threatens to swallow the doctrine entirely. *See* ECF No. 23 at 7-8 (citing *Prison Legal News v. Executive Off. for U.S. Att'ys*, 628 F.3d 1243, 1252-53 (10th Cir. 2011)). According to ICE, even if an agency has previously disclosed information in the public domain, it can still withhold that information in response to a FOIA request if it can show that the claimed exemption "may still serve its purpose." *Id.* This approach is inconsistent with how courts in the D.C. Circuit and the Fourth Circuit – including this Court – have applied the public domain doctrine and should therefore be rejected. Moreover, the Tenth Circuit case on which ICE exclusively relies for this argument is readily distinguishable and unpersuasive on its own terms.

The plaintiff in *Prison Legal News* sought access to autopsy photographs, death-scene video, and accompanying audio that were introduced as unsealed exhibits in a murder trial but were then "returned to the United States Attorneys Office [("EOUSA")] pursuant to a standard order regarding the custody of exhibits," and were not otherwise publicly disseminated. 628 F.3d 1243 at 1246. In response to the plaintiff's litigation following the wholesale denial of its FOIA request for these exhibits, the EOUSA disclosed portions of the photographs, video, and audio, but withheld other portions of the records under Exemption 7(C), citing the privacy

interests of the murder victim's family in not having the gruesome details of the violent death of their family member further publicly disseminated. The Tenth Circuit affirmed the EOUSA's invocation of Exemption 7(C) and rejected the plaintiff's argument that the public domain doctrine applied because the records had been made public during the murder trial. 628 F.3d 1243 at 1252–53. In doing so, the Tenth Circuit distinguished the D.C. Circuit's decision in *Cottone*, which rejected an agency's invocation of FOIA Exemption 3 to withhold records of wiretapped conversations because the contents of those conversations had been disclosed during a public trial. *Id.* In a paragraph upon which ICE relies heavily, but which contains no citations to other case law, the Tenth Circuit concluded that

> [t]he public domain doctrine is limited and applies only when the applicable exemption can no longer serve its purpose. Given that the public domain doctrine appears nowhere in the statutory text of FOIA, only the failure of an express exemption to provide any protection of the interests involved could justify its application. Even if this court adopted the public domain doctrine, it would not defeat Exemption 7(C)'s applicability in this matter because the purposes of Exemption 7(C) can still be served.

628 F.3d at 1253 (10th Cir. 2011). The Tenth Circuit further stated that "we have no occasion to decide whether the autopsy photographs and death-scene video were properly removed from the public record or whether those records should have been available for public copying." *Id.*

The readily distinguishable facts of *Prison Legal News* fatally undermine ICE's attempt to apply the Tenth Circuit's logic to the case at hand. The plaintiff there was trying to compel the disclosure of records that had been "removed from the public record" and were not "available for public copying." *Id.* Thus, it was perhaps not

unreasonable for the Tenth Circuit to consider the privacy interests invoked by the EOUSA in that context, where the public domain doctrine arguably did not even apply.[1] By contrast, the less-redacted version of the Helland Memo has never been removed from the public record after ICE disclosed it, and it is readily "available for public copying" by anyone who travels to the federal district courthouse in Philadelphia. Additionally, the records at issue in *Prison Legal News* were trial records removed from public view; here, FOIA mandates ICE's affirmative publication of the agency's statements of policy and internal guidance that "affect any member of the public," such as the Helland Memo. *Memorandum from the Att'y Gen. to the Exec. Dep'ts & Agencies* (July 4, 1967).[2]

Additionally, the Tenth Circuit's creation of a gaping exception to the public domain doctrine is inconsistent with the application of the doctrine by the D.C. Circuit, Fourth Circuit, and this Court. *See Cottone*, 193 F.3d at 554 (An "exemption *can serve no purpose* once information . . . becomes public.") (emphasis added); *Davoudlarian v. U.S. Dep't of Just., F.B.I.*, 32 F.3d 562 (4th Cir. 1994) (unpublished) (citing *Davis*, 968 F.2d at 1279–80); *Davis v. U.S. Dep't of Def.*, No. 3:07-CV-492-RJC-DSC, 2010 WL 2640559, at *1 (W.D.N.C. June 29, 2010) (ordering disclosure of information that was previously disclosed in separate litigation). None of these courts

---

[1] In truth, it is not even clear that the Tenth Circuit was adopting or applying the public domain doctrine in *Prison Legal News*. 628 F.3d at 1253 ("Even if this court adopted the public domain doctrine [. . .]"). This confusion further undermines any persuasive value of that opinion.

[2] https://www.justice.gov/oip/attorney-generals-memorandum-public-information-section-administrative-procedure-act.

has adopted the Tenth Circuit's approach, and this Court should decline to do so as well.

The parties appear to agree that the public domain doctrine applies, but disagree about the application of the doctrine. ICE relies on *Prison Legal News*—a distinguishable and unpersuasive decision from the Tenth Circuit—to argue that the doctrine should *only* apply when the purpose of the exemption can no longer be served. Plaintiffs' position is in keeping with the D.C. Circuit's formulation of the doctrine, which holds that "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone,* 193 F.3d at 554. This Court should apply the doctrine as formulated and applied by the D.C. Circuit, as it and other courts in the Fourth Circuit have done previously. *See Davis v. U.S. Dep't of Def.,* No. 3:07CV492-RJC-DSC, 2010 WL 1837925, at *10 (W.D.N.C. May 6, 2010); *Davis v. U.S. Dep't of Def.*, 2010 WL 2640559, at *1; *Evans v. Legislative Affs. Div., ATF*, No. 6:12-CV-00641-JMC, 2013 WL 708941, at *3 (D.S.C. Feb. 26, 2013) (citing *Cottone,* 193 F.3d at 554), *aff'd*, 548 F. App'x 72 (4th Cir. 2013), *and aff'd*, 548 F. App'x 72 (4th Cir. 2013); *James Madison Project v. Nat'l Sec. Agency*, No. CV TDC-22-0153, 2023 WL 4181196, at *6 (D. Md. June 26, 2023) (citing *Davis*, 968 F.2d at 1279). Following such application, any arguments from ICE about how withholding the previously disclosed information will continue to serve their purported interests under Exemption 7(E) are of no import.

//

//

### B. The less-redacted version of the Helland Memo is "truly public."

Plaintiffs have met their burden to show that the information ICE seeks to protect has been publicly disseminated. *Davis*, 968 F.2d at 1280. "[V]ery often . . . some type of hard copy facsimile will be the only practicable way for a FOIA requester to demonstrate that the specific information he has solicited has indeed circulated into the public domain." *Cottone,* 193 F.3d at 555. Plaintiff has done exactly that, by pointing to the less-redacted version of the Helland Memo that ICE made available in a permanent public record in separate litigation.

Yet ICE attempts to move the goalposts on what is "truly public" by arguing that this version of the Helland Memo is not "readily accessible" or "readily available" to the public and that therefore the public domain doctrine should not be applied to bar ICE from invoking Exemption 7(E) here. *See* ECF No. 23 at 8, 10. ICE cites no authority for its suggestion that "truly public" is equivalent to "readily accessible." The only requirement for the public domain doctrine to apply is for the FOIA requestor to identify "specific information in the public domain that duplicates that being withheld." *Public Citizen v. Dep't of State,* 11 F.3d 198, 201 (D.C. Cir. 1993) (citing *Afshar v. Dep't of State,* 702 F.2d 1125, 1130 (D.C.Cir.1983)). Plaintiffs have done so, and the particularities of how the public may access the less-redacted version of the Helland Memo are irrelevant to the application of this doctrine. Indeed, other courts have also found a waiver under the public domain doctrine in similar circumstances. *See, e.g.*, *Starkey v. Dep't of the Interior*, 238 F. Supp. 2d 1188, 1193

(S.D. Cal. 2002) (ordering agency to disclose two records identical to documents in the public domain and available through local government office).

Finally, ICE points to the instant litigation as evidence that the Helland Memo is not "truly public." ECF No. 23 at 11. But the D.C. Circuit has repeatedly addressed—and blessed—this exact scenario, even after the Supreme Court's decision in *U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 764 (1989). *See, e.g., Niagara Mohawk Power Corp.,* 169 F.3d at 19 ("[I]f the information is publicly available, one wonders, why is it burning up counsel fees to obtain it under FOIA? But the logic of FOIA compels the result: if identical information is truly public, then enforcement of an exemption cannot fulfill its purposes.") (D.C. Cir. 1999); *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 963 F. Supp. 2d 6, 12 (D.D.C. 2013) ("Because the public domain doctrine is a doctrine of futility, triggered only when it would serve no purpose to enforce an exemption, it is of almost no use to a plaintiff attempting to learn something that it does not already know. . . . But a FOIA requester is nonetheless free to press the point.").

Moreover, Plaintiffs are not simply seeking access to a memo they have already seen; they are also asking the Court to order ICE to publish the less-redacted version of the Helland Memo, as they are obligated to do under Section 552(a)(2), so that the public can "readily . . . gain access to the information necessary to deal effectively and upon equal footing with the Federal agencies." *Memorandum from the Att'y Gen. to the Exec. Dep'ts & Agencies* (quoting S. Rept., 88th Cong., 3). To the extent that the less-redacted version of the Helland Memo is not "readily accessible"

by the public, that merely lends additional weight to Plaintiffs' argument that this Court should hold ICE to its obligations under the FOIA by ordering it to publish the less-redacted version of the Helland Memo in the ICE FOIA Library. An order to publish would not undermine the policy interests underlying Rule 5.2(c), as those rules are meant to protect the privacy interests of the *individuals* involved in litigation related to immigration and other benefits. Fed. R. Civ. P. 52 advisory committee's notes to 2007 adoption ("The rule is derived from and implements the policy adopted by the Judicial Conference in September 2001 to address *the privacy concerns* resulting from public access to electronic case files.") (emphasis added). Requiring ICE to publish the less-redacted version of the Helland Memo would not expose any noncitizen's personal information to the public, but would significantly enhance the public's understanding of ICE's current GPS monitoring policies.

### C. ICE's public disclosure of a less-redacted version of the Helland Memo was official, voluntary, and permanent.

Courts generally follow the D.C. Circuit's three-part test for assessing whether an agency has "officially acknowledged" information previously: "First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed. . . . Third, . . . the information requested must already have been made public through an official and documented disclosure." *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C. Cir. 1990) (citing *Afshar v. U.S. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983)). There is no genuine dispute that ICE's prior disclosure of the less-redacted Helland Memo was an "official and documented disclosure." *Id.* In its Response, ICE claims

that it was "compelled" by the necessities of the habeas litigation in the Eastern District of Philadelphia to disclose the Helland Memo and that "there is no evidence that this disclosure was the result of an official agency decision to make [the memo] 'truly public[.]'" ECF No. 23 at 9. But ICE's disclosure of the less-redacted Helland Memo *was* the "official agency decision" to make the memo "truly public," and ICE has not pointed to any evidence to suggest that this disclosure was not voluntary, knowing, and official. Moreover, under the *Fitzgibbon* test, there is no consideration given to whether information was publicly disclosed in response to litigation or not, as that is simply beside the point.

This Court has previously applied the three-part test for "official acknowledgment" from *Fitzgibbon* and ordered production of withheld records that were disclosed in separate litigation. *See Davis*, 2010 WL 1837925, at *10 (holding that the first and third requirements were met)*; Davis*, 2010 WL 2640559, at *1 (holding, after *in camera* review, that the second requirement was also met, and ordering production of the withheld records). In the first *Davis* decision, former Chief Judge Robert Conrad, Jr., held that a "sworn declaration . . ., offered by DoD in litigation and open to the public eye, is a disclosure that is both official and documented." 2010 WL 1837925, at *10 (citing *Cottone*, 193 F.3d at 556). In the later *Davis* decision, after reviewing the records withheld by the Department of Defense *in camera*, the Court found that the previously disclosed declaration "matche[d]" the withheld records, thereby satisfying the second requirement of the *Fitzgibbon* test.

2010 WL 2640559, at *1. The Court therefore ordered the disclosure of those withheld records to the plaintiff. *Id.* The same result should be obtained here: disclosure.

Finally, were ICE's prior disclosure of the Helland Memo in habeas litigation in the Eastern District of Pennsylvania not enough to satisfy the *Fitzgibbon* test (which it is), ICE has also recently disclosed a less-redacted version of the Helland Memo in separate FOIA litigation as well. Prior to the instant litigation, Plaintiff Amica Center had filed a FOIA complaint against ICE in the District of Columbia seeking a broad set of records relating to ICE's "Alternatives to Detention" program and policies. *See* ECF No. 1, Complaint, *Amica Center for Immigrant Rights v. U.S. Immigration and Customs Enforcement*, No. 1:25-cv-03867 (D.D.C. November 5, 2025); *see also* Ex. 3, Declaration of Frederick Evan Benz (attached hereto). As part of that litigation, on October 5, 2026, ICE released ninety pages of responsive records to Plaintiff Amica Center. *See* Ex. 1, Second Interim Release Cover Letter (attached hereto). As part of that production, ICE included a version of the Helland Memo that withholds some information under Exemptions 6 and 7(C), but withholds none of the information under Exemption 7(E), as ICE has insisted on doing here. *See* Ex. 2, Recently Released Version of the Helland Memo (attached hereto). This voluntary, official disclosure of the same materials (again) in separate litigation shows that ICE's actions in this case fall far below the reasonableness standard that it must meet in defending its invocation of Exemption 7(E) here. Indeed, these two prior disclosures show that ICE has acted nothing short of arbitrarily and capriciously in the instant case. *Nat. Res. Def. Council v. U.S. Dept'f of Def.*, 442 F. Supp. 2d 857, 866

(C.D. Cal. 2006) ("'FOIA does not permit selective disclosure of information only to certain parties'" (quoting *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1082, 1088 (9th Cir. 1997))). The Court should therefore order ICE to remove all 7(E) exemptions from the Helland Memo and publish that version of the memo in its electronic reading room, as required by the FOIA.

## II. ICE is required to publish the less-redacted Helland Memo to its electronic reading room.

The affirmative disclosure requirements of § 552(a)(2) are more than a "convenient formalism," and set out Congress's strict requirements to prevent the "mushrooming growth of Government secrecy." *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171–72 (2004); H.R. Rep. No. 89-1497, 2 (1966). The Supreme Court has interpreted § 552(a)(2) as "represent[ing] a strong congressional aversion to 'secret [agency] law' . . . and represents an affirmative congressional purpose to require disclosure of documents which have 'the force and effect of law.'" *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975) (internal citations omitted). The Department of Homeland Security's (DHS) own FOIA guidance recognizes this obligation as being "fundamental to the faithful application of FOIA." *See* DHS 2024 Chief Freedom of Information Act Officer Report, 22 (March 2024).[3]

Section 552(a)(2) requires the agency to publish any "statement of policy, interpretation, or staff manual or instruction that affects a member of the public[.]" The Helland Memo is such a document, as it embodies ICE's mandatory policy to

[3] https://www.dhs.gov/sites/default/files/2024-07/24_0729_PRIV_2024-Chief-FOIA-Officer-Report.pdf (last visited on Sept. 3, 2026).

impose GPS monitors on noncitizen subject to removal "whenever possible." As alleged in the Complaint and now essentially conceded by ICE, prior to this litigation, when the agency did not publish any form of the Helland Memo, the agency also failed to comply with Section 552(a)(2). *See* ECF No. 1, Complaint, ¶ 9; ECF No. 21-1 at 8–11; *cf.* ECF No. 23 at 12–13. Nor did ICE's publication of a nearly entirely redacted version of the Helland Memo satisfy this obligation.

In its briefing on summary judgment, ICE has raised no argument that it was not required to publish the Helland Memo at all. Instead, it has wholly focused on its defense of its application of Exemption 7(E) to the Helland Memo when it published the memo. The agency has therefore waived the issue of whether it had a legal obligation to post a version of the memo (however unlawfully redacted it may be) under § 552(a)(2) prior to the litigation. *See Cox v. SNAP, Inc.*, 859 F.3d 304, 308 n.2 (4th Cir. 2017). [4]

ICE's defense of its present and ongoing failure to properly post the Helland Memo under § 552(a)(2) fails for the same reasons set out above that its application of Exemption 7(E) is unreasonable and unlawful. ICE relied wholly on its use of Exemption 7(E) as a means of negating any further obligation under § 552(a)(2). However, this frail defense is easily undone by the simple fact that, as discussed at

[4] ICE also continues to misread the text of § 552(a)(2). As discussed in Plaintiffs' cross-motion, even where an appropriate redaction (which ICE has failed to establish here) applies in proactively published materials, the statute requires "the justification for the deletion *shall be explained fully in writing*, and the extent of such deletion shall be indicated on the portion of the record which is made available or published . . . ." Section 552(b) allows the agency to redact information on records; it does not wipe out the entirety of the preceding portions of the statute.

length *supra*, the agency has already officially disclosed the memo devoid of redactions under Exemption 7(E) and cannot rely on the exemption to dodge its responsibilities under § 552(a)(2).

If there was any remaining doubt of its affirmative obligations to publish the memo as a policy and/or guidance that affects the public, § 552(a)(2)(D) requires publication of

> copies of all records, regardless of form or format—that have been released **to any person under paragraph (3)**; and that because of the nature of their subject matter, the agency determines have become or are likely to become the subject of subsequent requests for substantially the same records; **or** that have been requested 3 or more times . . . .

5 U.S.C. 552(a)(2)(D)(i)-(ii) (emphasis added). This portion of the statute has arguably been met twice over. As discussed *supra*, ICE has released the unredacted Helland Memo recently in a production to Plaintiff Amica Center during litigation. It also appears quite likely that other individuals and organizations have requested a copy of the Helland Memo, given the sustained media interest in ICE's GPS monitoring of tens of thousands of people.[5] While this would once have been

[5] See Marianne LeVine, et al., ICE moves to shackle some 180,000 immigrants with GPS ankle monitors, WaPo (July 24, 2025) available at https://www.washingtonpost.com/immigration/2025/07/24/ice-check-in-ankle-monitor-immigrants/; Immigration Policy Tracking Project, *Reported: ICE expands use of ankle monitors for immigrants in Alternatives to Detention program* (July 24, 2025) (summarizing the June 9 memo and its requirement to escalate supervision to GPS monitors) available at https://immpolicytracking.org/policies/reported-ice-expands-use-of-ankle-monitors-forimmigrants-in-alternatives-to-detention-program/; Elaine Mallon, *ICE memo calls personnel to fit migrants in ankle monitors 'whenever possible'*, The National News Desk (July 25, 2025) available at https://thenationaldesk.com/news/americas-news-now/ice-puts-ankle-monitors-on-immigrants-tom-homansmartlink-border-donald-trump.

reasonably ascertained via the agency's monthly FOIA logs documenting the requests submitted to ICE, the agency ceased publishing[6] them on June 9, 2025, with the last log detailing the requests submitted in April 2025. It is highly likely that both portions of § 552(a)(2(D) have been met, but the agency has hidden the information necessary to establish it. The agency's refusal or failure to publish the FOIA logs precipitates some speculation; however, there is an alternative means of ascertaining the requisite information in the instant proceedings—discovery. Regardless, the agency should be able to recognize the obvious—it needed and continues to need to publish a minimally redacted version of the Helland Memo in order to uphold its responsibilities under FOIA.

In sum, ICE has waived any defense of its initial unlawful conduct by failing to affirmatively publish the Helland Memo. Nor can it claim ignorance of this obligation as the plain text of the statute dictates its affirmative publication obligations several times over. ICE's violation of § 552(a)(2) did not end with its posting of the heavily redacted memo, and its defense of that publication fails for all the reasons that its invocation of Exemption 7(E) fails. This Court should therefore order ICE to publish the Helland Memo without any redactions under Exemption 7(E) to its electronic reading room/FOIA Library.

//

//

[6] This cessation of publishing the logs also violates the statute. *See* 5 U.S.C. § 552(a)(2)(E) (requiring "a general index of the records referred to under subparagraph [552(a)(2)](D).").

## III. Plaintiffs merit declaratory and injunctive relief.

Despite FOIA's clear mandate, the agency has consistently failed to meet its disclosure obligations, requiring repeated litigation to bring it into some form of compliance. *See* ECF No. 21-1, Plaintiffs' Cross-Motion at 9 (citing cases illustrating the agency's repeated failures to adhere to § 552(a)(2)). Publishing a completely inscrutable version of the Helland Memo is equivalent to having never posted the Helland Memo at all. Moreover, ICE has already officially disclosed the Helland Memo and has waived its application of Exemption 7(E). Plaintiffs warrant declaratory and injunctive relief that declares ICE's past and present violation of § 552(a)(2) unlawful in addition to enjoining the agency from its ongoing violation of the statute and ordering it to post an appropriately unredacted version of the Helland Memo. *See Animal Legal Defense Fund v. U.S. Department of Agriculture*, 935 F.3d 858, 876 (9th Cir. 2019) ("FOIA unequivocally mandates that agencies shall *make available certain documents in virtual reading rooms. 5 U.S.C. § 552(a)(2)."); New York Legal Assistance Group v. BIA*, 987 F. 3d 207, 223 (2nd Cir. 2021) (holding that district courts have the authority to order agencies to comply with their § 552(a)(2) obligations and make certain records publicly available.).

Plaintiffs also warrant declaratory and injunctive relief preventing the agency from removing or further altering the Helland Memo once it is properly posted to its reading room. ICE's aversion to its affirmative publication duties—ones clearly stated by Congress in the FOIA statute—has been exemplified recently by its deletion of over two dozen reviews of noncitizen deaths in custody. *See* Tanvi Misra, *The*

*Intercept*, "ICE Deleted Reviews for Deaths in Custody that Cited Shoddy Medical Care" (September 30, 2026).[7] ICE unfortunately cannot be trusted to meet its § 552(a)(2) obligations, has failed to meet them as a matter of law with respect to the Helland Memo, and this Court should grant the Plaintiffs' motion for summary judgment, order the agency to properly post the Helland Memo, and enjoin the agency from any attempt to remove the memo from its FOIA reading room.

**CONCLUSION**

This litigation should not have been needed. As a first point, ICE could have avoided this lawsuit by following its obligations under 5 U.S.C. § 552(a)(2) to affirmatively publish the Helland Memo when it was issued, as it is a broadly applicable statement of policy that has gone on to (negatively) affect the rights of tens of thousands of members of the public who have been placed on GPS monitors without an individualized justification for such harsh treatment. Second, ICE could have avoided this lawsuit by timely responding to Plaintiffs' FOIA request; given that ICE ultimately produced a grand total of 5 pages in response to Plaintiffs' request, it beggars belief that the most well-funded law enforcement agency in the country could not manage to produce those five pages within a few weeks after receiving Plaintiffs' request. Finally, ICE could have avoided prolonging this litigation with summary judgment briefing had it complied in good faith with Plaintiffs' request to publish the

---

[7] https://theintercept.com/2026/09/30/ice-custody-deaths-medical-neglect/. *See also*, St. John Barned-Smith, SF Chronicle, "ICE published – then removed – internal reports detailing medical failures in detainee deaths across the U.S." (Sept. 30, 2026).

Helland Memo in a manner that would reasonably apprise the public of its contents. Instead, at each step, ICE has flouted its obligations under the FOIA and engaged in gamesmanship that does nothing to serve its claimed interests in withholding information from the Helland Memo, but simply expends additional taxpayer dollars and more of this Court's time in attempting to hide from Plaintiffs – and the public – what it has already disclosed in other fora. To rectify this situation, the Court should grant summary judgment to the Plaintiffs, order ICE to remove the Exemption 7(E) redactions from the Helland Memo, and order ICE to publish and maintain the Helland Memo in its electronic reading room.

Dated: October 13, 2026

Respectfully submitted,

By: /s/ Daniel Melo

Daniel Melo
The Melo Law Firm
NC Bar # 48654
2920 Forestville Road, Ste 100
PMB 1192
Raleigh, NC 27616
Tel: (919) 348-9213
dan@themelolawfirm.com
*Counsel for Plaintiffs*

*/s/ F. Evan Benz*

F. Evan Benz, Esq.
NC Bar No. 49077/GA Bar No. 820944
AMICA CENTER FOR IMMIGRANT RIGHTS
1025 Connecticut Ave NW Ste. 701
Washington, DC 20036
Phone: (202) 869-3984
evan@amicacenter.org
*Counsel for Plaintiffs*